Electronically FILED by
Superior Court of California,
County of Los Angeles
10/31/2025 12:31 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Villchis-David, Deputy Clerk

Alaba S. Ajetunmobi, Esq. SBN 219228
LAW OFFICE OF ALABA AJETUNMOBI
21151 S. Western Ave., Ste 245
Torrance, CA 90501
Tel.: (424) 271-7275
Fax: (424) 271-7286
Email: alabaajet@gmail.com

Attorney for Plaintiff
DEAN MARTIN

# SUPERIOR COURT OF CALIFORNIA

# OF THE COUNTY OF LOS ANGELES

| | |
|---|---|
| DEAN MARTIN,<br><br>Plaintiff,<br><br>vs.<br><br>CHASE BANK, U.SA. N.A,<br><br>and DOES 1 THROUGH 25, Inclusive<br><br>Defendants | **CASE NO.:** 25STCV31786<br><br>**FOR: COMPLAINT FOR DAMAGES:**<br><br>1. **CONVERSION**<br>2. **FRAUD – INTENTIONAL MISREPRESENTAION**<br>3. **CONSTRUCTIVE FRAUD**<br>4. **UNJUST ENRICHMENT** |

COMPLAINT FOR DAMAGES-1

Plaintiff alleges

1. Plaintiff, DEAN MARTIN (hereinafter "Plaintiff") and is a resident of Los Angeles County, California is, and at all times mentioned herein is, and was at all relevant times, the owner in fee of the property commonly referred to as 252 E. 46th Street, Los Angeles, CA 90011 ("the property").

2. At all times mentioned, defendant CHASE BANK, U.S.A, N.A, (hereinafter "Chase" or "the Bank") is, and all times herein mentioned was, a national bank association organized and existing under and by virtues of the laws of the United States of America, with its principal place of business in the City of New York, State of New York, and the branch office at which the transaction that is subject of this action arose is in Los Angeles County, in California.

3. At all times herein mentioned, the defendants, DOES 1 through 25, inclusive, were the agents, servants and employees of the defendant, and at all times herein mentioned, were acting within the course and scope of their agency and employment with said principal or employer.

4. At all times mentioned herein, the defendants, DOES 1 through 25, inclusive, were the agents, servants and employees of the co-defendant, Chase Bank, and at all times herein mentioned, were acting within the course and scope of their agency and employment with said principal or employer.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants herein named as DOES, are unknown to plaintiff who, therefore, sues said defendants by such fictitious names; and leave of court will be asked to amend this complaint to show their true names and capacities when the same have become ascertained.

6. Around February 2008 when the transaction that is subject of this action arose, defendant Chase, and other banking and financial institutions were engaged in predatory financial

COMPLAINT FOR DAMAGES-2

products which targeted low-income, low-information homebuyers and homeowners,
disproportionate number of whom belonged to racial minorities.

7.  Plaintiff, an African American, was amongst this group of mostly financially
    unsophisticated and functionally illiterate preys. At the end of the day, millions of
    American homeowners, like plaintiff, found themselves owing more on their mortgages
    than their homes were worth

8.  Dean Martin had 12 years of schooling and left high school at 17 to join the military. He
    joined the military in 1974 during the Vietnam era and left in 1977 with post-traumatic
    stress disorder (PTSD). Mr. Martin worked several odd jobs, including time as an
    attendant in a Day Care Center, then as a general laborer at a Sear's warehouse, and a
    custodian at Kaiser Permanente. He started his present position in maintenance at the
    United States Postal Services around August 1982.

9.  Mr. Martine bought the property in South Central Los Angeles through a Veterans
    Affairs (VA) Home loan in November 2003 in the amount of $80,800. In March 2004,
    Mr. Martin secured a second loan for $40,000 on the property through Immediate
    Funding Inc.

10. In April 2005, the loan was refinanced with ResMae Mortgage in the amount of
    $150,000. Then in February 2008, at the height of the predatory lending mentioned
    above, Chase Bank took over the loan under the category of "unknown loan type." When
    Chase took over, the loan was raised from around $150,000 to $258,000. At this time,
    Mr. Martin was not aware of the reasons why his loan had jumped from $150,000 to
    $258,000. The only thing he knew was that his loan had been transferred from ResMae to
    Chase Bank.

11. Sometime thereafter, Mr. Martin asked why there was a sudden increase in his loan; he
    was informed that it was because of the transfer of the loan from ResMae to Chase Bank.
    He was assured everything was alright. Given his limited knowledge about financial

transaction, his mental disability, and considering his background in obeying and respecting authorities, Mr. Martin accepted the explanation.

12. To catch up with his mortgage payments following the sudden increase in his loan, Mr. Martin was advised by officers at Chase Bank to request modifications of his mortgage. He did request and was granted two modifications through Chase Bank.

13. However, Mr. Martin's finances did not improve. He was again advised to request for a third modification. This time, Mr. Martin sought the advice of an attorney.

14. Mr. Martin went to the attorney (Alaba Ajetunmobi) on or about April 7, 2021. He informed the attorney that he already had two modifications but could not produce any documentations showing the terms of the previous modifications.

15. Late in April 2021, and on the attorney's initiative, plaintiff found that he had been given about $100,000 (One Hundred Thousand Dollars) when Chase Bank restructured the loan around February 12, 2008. Plaintiff could not remember receiving any loan in that amount and requested the attorney to investigate the existence of the pay-off.

16. On or about April 23, 2021, the attorney wrote a letter addressed to Chase Bank at its headquarters in New York and copied to its branch in Los Angeles, requesting documented information about the alleged loan. A copy of the letter is attached as Exhibit "A" and made a part hereof. Chase Bank did not respond to the letter.

17. At this time, plaintiff was not sure how and for what the $100,000 was given to him. His attorney advised that he needed more information to pursue an action against anyone because it was not known who paid the money and for what reasons.

18. Early in January 2023, plaintiff came back to the attorney with a document showing Investors Title Company was involved in the transaction, which showed that a sum of $49,188.57 was paid to Mr. Martin as "refund due buyer/borrower" and that another sum of $40,069.64 was supposedly paid to Lincoln Capital for "payoff" in a Closing Statement emanating from Investors Title Company.

COMPLAINT FOR DAMAGES-4

19. Mr. Martin was confused. He was certain that he had not been paid any money by any institution and had not directed any institution to make a "payoff" on his behalf. He wanted to ascertain which company had actually paid him the money.

20. Plaintiff, therefore, directed his attorney to find out from Investors Title Company who paid him the money. A copy of the letter from the attorney dated January 16, 2023, is attached as Exhibit "B." The title company did not respond to the enquiry.

21. At this time in January 2023, Mr. Martin suspected that he might have been swindled. He categorically maintained that he had never received any refund of $49,000 from any bank and that he did not owe anyone $40,000 that was to be paid off. But he was not sure who might have allegedly paid him the money.

22. Since none of the institutions he or his attorney had contacted would respond to his inquiries, plaintiff decided to focus his attention on Chase Bank, hoping that the bank would be able to give him details of the money allegedly paid to him.

23. His persistence paid off. On or about May 3, 2024, Chase Bank sent Mr. Martin the details about his account. Among other things, the statement showed that at the time of the loan refinancing with Chase Bank, Chase allegedly paid Mr. Martin "cash to pay debts" in the amount of $191,556.23. The bank also allegedly paid "cash to borrower" in the amount of $56,943.34 to Mr. Martin. A copy of the statement Chase sent to Mr. Martin is attached as Exhibit "C" and incorporated herein When Mr. Martin received the statement; he was alarmed because he did not owe anyone debts to be paid off in the amount of $191,000 and was not paid cash in the amount of $56,000 by Chase Bank.

24. With his faith in authority Mr. Martin still believed that Chase would be forthright with him and provide him with evidence in the form of checks for the payments allegedly added to his account. He requested from Chase Bank copies of the checks made out to him or to any other person on his behalf. Chase Bank promised to provide him with the copies but never did till the filing of this complain.

25. Until Chase Bank provided him with the statement on or about May 3, 2024, Mr. Martin had no reason to believe and was not aware that Chase Bank had claimed that it paid him "cash to pay debts" in the amount $191,556.23, and that he was paid "cash to borrower" in the amount of $56,943.34.

26. As stated above, Chase officials informed Mr. Martin that the increase in his mortgage loan was because of the transfer of the loan to Chase. Mr. Martin had absolute faith in the integrity of Chase Bank and, as a result, he reasonably believed that Chase Bank would conduct its business with him with integrity and would not deceive or do anything to his detriment.

27. Up till the filing of this Complaint, Chase Bank has failed and refused to provide plaintiff with any explanation why it (Chase Bank) claimed that it paid Plaintiff "cash to borrower" in the amount of $56,943.34 and "cash to pay debts" in the amount of $191,556.23.

28. Plaintiff did not know that $49,188.57 was paid to him as "refund due buyer/borrower" and that another sum of $40,069.64 was supposedly paid to Lincoln Capital for "payoff" in a Closing Statement emanating from Investors Title Company, until January 2023. Furthermore, Plaintiff was not aware that Chase allegedly paid him "cash to pay debts" in the amount of $191,556.23, and that the bank also allegedly paid him "cash to borrower" in the amount of $56,943.34, until he received the letter of May 3, 2024, from Chase Bank,

29. As pointed out in Paragraphs 8 and 11 of this complaint, Plaintiff was limited educationally, socially and mentally in his ability to question authorities and could not file this complaint until he received confirmation from Chase Bank in May 2024 that the bank was responsible for the conducts complained herein. If he had known the facts contained in Chase Bank's letter of May 2024 earlier, he certainly would have filed this complaint sooner.

COMPLAINT FOR DAMAGES-6

30. Plaintiff could not have discovered the facts giving rise to these causes of action earlier despite reasonable diligence. Until Chase's May 2024 correspondence, Plaintiff was unaware that Chase falsely represented disbursements exceeding $240,000.

31. The statute of limitations is therefore tolled under the **delayed discovery rule** (*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797 (2005)) and under **Code of Civil Procedure § 352(a)** due to Plaintiff's mental and cognitive limitations.

32. Now, Plaintiff demands the full payments of the "cash to pay debts" in the amount of $191,556.23, together with "cash to borrower" in the amount of $56,943.34, allegedly paid to plaintiff by Chase Bank.

## FIRST CAUSE OF ACTION FOR

### (Conversion Against Defendant Chase Bank)

33. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 to 27 above as though fully set forth herein.

34. Plaintiff owned and possessed a right to his property at 252 E. 46th Street, Los Angeles, CA 90011 ("the property"), and to any and all benefits arising from the ownership of the property.

35. Sometime in February 2008, Chase Bank claimed that it refinanced Plaintiff's loan on the property and that it allegedly paid on behalf of Plaintiff "cash to pay debts" in the amount of $191,556.23, and also allegedly paid Plaintiff "cash to borrower" in the amount of $56,943.34. The allegations are false in that these payments were not paid on behalf of Plaintiff or paid to Plaintiff to Mr. Martin.

36. By claiming that it paid the amounts contained in the above Paragraph 30, Chase Bank has substantially interfered with Plaintiff's property by knowingly or intentionally taking possession of the money, by preventing Plaintiff from having access to the amounts allegedly paid, and by refusing to pay the money after Plaintiff demanded its return.

COMPLAINT FOR DAMAGES-7

37. Plaintiff did not consent to the taking of the money.

38. Plaintiff was harmed, and Chase Bank was a substantial factor in causing Plaintiff's harm.

39. The aforementioned acts of Defendant were undertaken with intent to defraud Plaintiff or intended to cause injury to plaintiff or despicable conduct undertaken with a conscious disregard of the rights of plaintiff and justify an award of punitive damages in an amount appropriate to punish defendants and set an example for others.

## SECOND CAUSE OF ACTION

### (Intentional Misrepresentation Against Chase Bank)

40. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 to 33 above as though fully set forth herein.

41. Defendant Chase Bank represented to Plaintiff that "cash to pay debts" in the amount of $191,556.23, was paid on Plaintiff's behalf, and that Chase Bank allegedly paid Plaintiff "cash to borrower" in the amount of $56,943.34, from the refinancing of the loan on his property.

42. Chase Bank knew that the representation was false.

43. Chase Bank knew that the representation was false when it made it, or that it made the representation recklessly and without regard to its truth.

44. Defendant Chase Bank intended that Plaintiff rely on the representation.

45. Plaintiff reasonably relied on the representation.

46. Plaintiff was harmed, and Plaintiff's reliance on the representation was a substantial factor in causing his harm.

47. The aforementioned acts of Defendant were undertaken with intent to defraud Plaintiff or intended to cause injury to plaintiff or despicable conduct undertaken with a conscious disregard of the rights of plaintiff and justify an award of punitive damages in an amount appropriate to punish defendants and set an example for others.

## THIRD CAUSE OF ACTION

### (Constructive Fraud Against Chase Bank)

48. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 to 40 above as though fully set forth herein.

49. The mortgage loan on Plaintiff's property at 252 E. 46th Street, Los Angeles, CA 90011 was allegedly transferred from ResMae to Chase Bank sometime in February 20008, and that Chase Bank allegedly refinanced the loan thereafter.

50. Chase Bank was Plaintiff's mortgagor and allegedly acted on behalf of Plaintiff for the purposes of transferring and refinancing Plaintiff's loan.

51. On May 3, 2024, Chase Bank represented to Plaintiff that in February 2008, it paid on behalf of Plaintiff "cash to pay debts" in the amount of $191,556.23, and also allegedly paid Plaintiff "cash to borrower" in the amount of $56,943.34, from the refinancing of the loan.

52. Chase Bank knew or should have known that Plaintiff would need documents, particularly checks made to the parties concerned, to confirm the transactions purportedly conducted in the preceding Paragraphs of this complaint. Chase Bank did not provide the documents.

53. Chase Bank misled Plaintiff by failing to provide Plaintiff with inaccurate or incomplete information regarding the transactions it claimed to have conducted on behalf of Plaintiff.

54. Plaintiff was harmed, and Chase Bank's conduct was a substantial factor in causing Plaintiff's harm.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment Against Chase Bank)

55. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 to 47 above as though fully set forth herein.

COMPLAINT FOR DAMAGES-9

56. Chase Bank was unjustly enriched when it claimed that it paid "cash to pay debts" in the amount of $191,556.23, on Plaintiff's behalf, and that it allegedly paid Plaintiff "cash to borrower" in the amount of $56,943.34, from the refinancing of the loan on his property.

57. That representation was false, and Plaintiff is entitled to full amount of the misappropriation with interests.

**WHEREFORE,** plaintiff prays for judgment against defendant as follows:

1. For general damages;
2. For special damages according to proof;
3. Fon interest at the rate of 10 percent per annum from February 2008;
4. For exemplary or punitive damages;
5. For reasonable attorney's fees;
6. For costs of suit incurred herein; and
7. For such other and further relief as the court may deem proper.

Dated: October 28, 2025

LAW OFFICE OF ALABA
AJETUNMOBI
21151 S. Western Ave., Ste 245
Torrance, CA 90501
Tel.: (424) 271-7275
Fax: (424) 271-7286
Alaba S. Ajetunmobi

COMPLAINT FOR DAMAGES-10

# Exhibit "A"

LAW OFFICES OF
## ALABA S. AJETUNMOBI
Alaba S. Ajetunmobi
ATTORNEY AT LAW                                   April 23, 2021

Chase Headquarters
270 Park Ave.
New York, NY 10017

Re: Property Address: 252 E. 46th Street, Los Angeles, CA 90011-3423
    Owner: Dean Martin
    Document No.: 08-0253592
                 09-1969702

Dear Sir/Madam:

This law firm represents Dean Martin. Mr. Martin has retained us to examine his financial dealings with some
financial institutions regarding his property at 252 E. 46th Street, Los Angeles, CA 90011-3423.

We found that sometime around 02/12/2008, your institution reported it was engaged with Mr. Martin in an
"unknown loan type" in the amount of $100,000.00 (One Hundred Thousand Dollars), which was attached to his
property. Mr. Martin claims ignorance about receiving a loan in that amount from your bank or any other
financial institution.

Mr. Martin is Black American with his property in South Central Los Angeles, California. We are extremely
concerned that some of the institutions we have been examining might have taken advantage of his minority
status to prey on him, as they have been doing with hundreds of homeowners in his neighborhood.

Since this loan, according to insubstantial documents at our disposal, is ascribed to Chase Bank, we feel you are
in a good position to assist us in explaining the details of this loan to Mr. Martin. We are, therefore, requesting
that you send to this office the full details about the loan, including signed documents, if this loan originated
from your bank.

Thank you for your cooperation.

Sincerely,

Alaba Ajetunmobi

Cc:
JP Morgan Chase & Co. - Los Angeles, CA
300 S. Grand Avenue
Los Angeles, CA 90071


100 Oceangate, 12th Floor
Long Beach, CA 90802

PHONE (562)628.5578     FAX (562) 628.5579     EMAIL atty.alabaajet@justice.com

# Exhibit "B"

`

**LAW OFFICES OF**
**ALABA S. AJETUNMOBI**
Attorney At Law

**100 Oceangate, 12ᵗʰ Floor Long Beach, CA 90802**
Phone (562) 628-5578; Fax (562)628-5579; Email: alabaajet@gmail.com

January 16, 2023

Investors Title Company
4665 MacArthur Court, Suite 100
Newport Beach, CA 92660

Re: Dean Martin
   Escrow No.: 90609JF-923 JF3
   Property: 252 East 46ᵗʰ Street
   Los Angeles, CA 90011

Dear Sir/Madam:

Our law firm represents Mr. Dean Martin regarding the above-described transaction. Mr. Martin has just brought to our notice a recently discovered document, which emanated from your office. See the attached copy of Buyers/Borrowers Closing Statement.

Our client maintains that he was not paid any "refund due buyer/borrower" in the sum of $49,188.57, nor was he aware of any $40,069.64 loan due to Lincoln Capital for "payoff" as shown in the Closing Statement.

We respectfully seek your assistance in resolving this problem by providing us with copies of the checks or other evidence of payments to Mr. Martin and to Lincoln Capital.

Thank you for your assistance.

Sincerely,

Alaba Ajetunmobi

# Exhibit "C"



Chase / Mail Code OH4-7302
P.O. Box 183222
Columbus, OH 43218-3222
For Undeliverable Mail Only

May 3, 2024

Dean Martin
252 E 46th Street
Los Angeles, CA 90011

**We enclosed the information you requested**

Account:            0024864761
Property Address:   252 E 46th Street
                    Los Angeles, CA 90011-0000

Dear Dean Martin:

Thank you for contacting us about your account. We enclosed the document(s) you requested.

If you have questions, please call us; we accept operator relay calls. We appreciate your business.

Sincerely,

Steve Brooks

Steve Brooks
Executive Director
Chase
1-800-848-9136
chase.com

Enclosure(s)

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita
ayuda para traducirla, comuníquese con nosotros llamando al 1-800-848-9136.

ID 3328909
YE995

A. Failure of the Issuing Agent, Approved Attorney or Approved Closing Vendor to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

B. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except as such shall result from failure of the Issuing Agent, Approved Attorney or Approved Closing Vendor to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

C. Mechanics' and materialmen's liens in connection with the Real Estate Transaction if it is a purchase or lease or construction loan transaction, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

D. Fraud, dishonesty or negligence of your employee, agent, attorney or broker.

E. Your settlement or release of any claim without the written consent of the Company.

F. Any matters created, suffered, assumed or agreed to by you or known to you.

2. If the closing is conducted by an Approved Attorney or Approved Closing Vendor, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Approved Attorney or Approved Closing Vendor.

3. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

4. The protection herein offered shall not extend to the actions of the Issuing Agent, Approved Attorney or Approved Closing Vendor if in the aggregate of all funds you transmit to the Issuing Agent Approved Attorney or Approved Closing Vendor for the Real Estate Transaction exceeds the amount set forth on first page of this letter and the Company shall have no liability for the mishandling of all or any part of such funds by the Issuing Agent. Approved Attorney or Approved Closing Vendor except pursuant to an express written agreement between you and the Company made with reference to the Real Estate Transaction.

5. Any liability of the Company for loss incurred by you in connection with the closing of the Real Estate Transaction by the Issuing Agent, Approved Attorney or Approved Closing Vendor shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

6. Claims shall be made promptly to the Company at its principal office at 1 First American Way, Santa Ana, CA 92707, ATTN: Claims Department. When the failure to give prompt notice shall prejudice the Company then liability of the Company hereunder shall be reduced to the extent of such prejudice.

Any previous insured closing service letter or similar agreement is hereby canceled with respect to the Real Estate Transaction.

FIRST AMERICAN TITLE INSURANCE COMPANY

Keith Pearson
Vice President

Digital Signature: HAEDB947EBA56AB0720S0LD79619CL58607C

You Can View This CPL As:
http://cpl.closingprotection.com/Letters2009/01/25/CLFH3505NLD2DA5D055DC(009CH33C6723B.pdf



DATE:              January 28, 2008

OUR REFERENCE:     Escrow No. 90609JF-923-JF3

SENT BY:           Jesus Flores

## WIRING INSTRUCTIONS - Investors Title Company

**PLEASE WIRE YOUR FUNDS TO THE FOLLOWING:**

Bank: Centennial Bank
Routing No.: 107008981
Address:     13700 E. Arapahoe Road
             Englewood, CO  80112
Credit: Investors Title Company
Account No.: 2400627
Escrow No.: 90609JF-923-JF3

**PLEASE REFERENCE:**

Escrow #: 90609JF-923-JF3
Customer Name: Dean Martin

4665 MacArthur Court  Suite 100  Newport Beach, CA  92660  •  (949) 225-1200  •  Fax (949) 225-1559

WireInst (Rev. 07/20/06)

Your lender is:  Chase Bank US.  N.A.

MORTGAGOR: DEAN MARTIN

LOAN NO: 1050492737                    PROPERTY: 252 E 46TH ST
                                       Los Angeles, CA  90011-0000

===============================================================
===============================================================

# NOTICE OF RIGHT TO CANCEL

Your Right to Cancel

You are entering into a transaction that will result in a mortgage/security interest in your home. You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occur last:

(1) The date of the transaction, which is  __February 04, 2008__ ; or

(2) The date you received your Truth-In-Lending disclosures; or

(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/security interest is also cancelled. Within twenty (20) calendar days after we receive your notice, we must take steps necessary to reflect the fact that the mortgage/security interest in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

How to Cancel
If you decide to cancel this transaction, you may do so by notifying us in writing at:

Chase Bank USA, N.A.

601 Oakmont Lane 3rd Floor
Westmont, IL 60559

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of February 07, 2008 (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL:

Signature _____    Date_____

I ACKNOWLEDGE RECEIPT OF TWO COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

Signature _Dean Mint_____    Date _2-4 -08_____

GENERAL NOTICE OF RIGHT TO CANCEL
C-6098 (1/97) (Replaces Rev. 12/95) Page 1 of 1

bear Stearns & Co.     1/28/2008 3:07:00 PM    PAGE    3/005    Fax Server

 EMC

PAGE 2 OF PAYOFF STATEMENT
EMC LOAN NUMBER: 0011081783

After February 01, 2008, a new payoff quote will be required.  The
payoff reflected above is based on presentment and acceptance of all
payments posted.  The mortgagor should not stop payment on any payment
remitted regardless of the payment method.  IF EMC is notified of a
stop payment or returned check, the lien will not be released, the
applicable fees may be assessed, and the amount required to pay the
loan in full will be adjusted accordingly.

THE ABOVE FIGURES ARE VALID AS OF THE DATE ISSUED ONLY.  Issuance of
this statement does not suspend the account activity pending a payoff.
The contractual requirement to make the mortgage payments when
they are due remains in effect.  A LATE CHARGE OF $ 48.99 WILL BE
ASSESSED 15 days after any payment is due and will be added to
the amount required to pay off the loan.

PAYOFF FUNDS MUST BE SUFFICIENT TO PAY THE LOAN IN FULL, including
all escrow disbursements, accrued interest, prepayment penalties,
principal, fees, and other servicing charges.  If the funds received
are not sufficient to meet the payoff requirements, or if they are
not in the form of a wire transfer or certified funds, they will be
returned to the issuing party.

The escrow balance is subject to change on a daily basis, as normal

deposits and/or disbursements occur.  The escrow balance will be
refunded within 30 days after payoff.  The escrow balance may not
be used toward the payoff of the loan.  The current escrow balance
is $.00.

If EMC is currently drafting your checking or savings account for your
mortgage payments, the drafts will continue until EMC receives your
written authorization to terminate the drafts.  Please allow at least
15 days for EMC to complete the draft termination process.

EMC DOES NOT PROVIDE VERBAL PAYOFF QUOTES; however, to order a new or
updated payoff quote to be faxed or mailed within one (1) business
day, please use EMC's AUTOMATED INFORMATION LINE AT 1-800-723-3004.
You may also fax your request to EMC at 1-469-759-4708 or mail it to
P.O. Box 293150, Lewisville, TX 75029-3150 – Attention: Payoff
Department.

Please note, ONLY WIRE TRANSFER OR CERTIFIED FUNDS (cashier's checks
or money orders) are accepted to pay off a loan.  TO RECEIVE SAME DAY
CREDIT, PAYOFF FUNDS MUST BE RECEIVED BY 2:00PM CENTRAL TIME.  PAYOFFS
RECEIVED AFTER 2:00PM CENTRAL TIME WILL ACCRUE AN ADDITIONAL DAY OF
INTEREST.

XP502-037-r103107/(S1

800 State Highway 121 Bypass, Lewisville, Texas 75067-3901
Mailing Address: P.O. Box 293150, Lewisville, Texas 75029-3150

Bear Stearns & Co.    1/25/2008 3:07:06 PM    PAGE    2/005    Fax Server

 **EMC**

EMC Mortgage Corporation                          PAYOFF STATEMENT PAGE 1
800 State Highway 121 Bypass
Lewisville, Texas 75067
. . . . . . . . . . . . . . .                           January 25, 2008

Created By Emc Program
Dean Martin
252 E 46th St
Los Angeles, CA 90011

                                                  LOAN NO:  0011081783
RE:                                               LOAN TYPE:  Conventional
Dean Martin                                       PROPERTY ADDRESS:
                                                       252 E 46th St
252 E 46th.St                                          Los Angeles CA 90011
Los Angeles. CA 90011
            ***********************************************
            *    ONLY WIRE TRANSFERS OR CERTIFIED         *
            *    FUNDS ARE ACCEPTED TO PAY OFF A LOAN     *
            ***********************************************
THE INTEREST FIGURE IS GOOD THROUGH February 01, 2008.
    NOTE: funds received after February 01, 2008 will require an additional
          $ 27.19 interest per Day until EMC Mortgage Corporation (EMC)
    receives sufficient funds to pay the loan in full.

THIS LOAN IS DUE FOR THE January 01, 2008 PAYMENT.
THE CURRENT TOTAL UNPAID PRINCIPAL BALANCE IS:
INTEREST AT  6.820008                             $      145,540.96
PREPAYMENT PENALTY FLAT FEE (See Page 4)          :        1,654.32
ESCROW/IMPOUND OVERDRAFT                          :        3,939.95
UNPAID LATE CHARGES                                         482.73
Fax Fee(s)                                                   57.85
Recording Fee                                                 .00
Trustee Fees                                                  9.00
Payoff Quote Fee                                              .00
Proj Escrow                                                 30.00
O/S Atty Fees                                                 .00
Release/Recon Fee                                            45.00
Deferred Interest                                             .00
* * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $    151,759.81

XP501-061-r103107/(S1

800 State Highway 121 Bypass, Lewisville, Texas 75057-3504
Mailing Address: P O  Box 141358  Irving  Texas 75014-1358

*[handwritten:]* 2/1/08
I spoke w/ Sheila MADC, CR
800 723-3004
She verified January 08
payment was rec'd 1/31/08

13. Original Dear Home Owner Letter.

14. Original Name Affidavit for each borrower.

15. Original Occupancy Certificate.

16. Original Master Certificate/Title Insurance Policy or a copy of the Title Insurance Commitment (if authorized by Chase Bank USA, N.A.).

17. **One (1) copy of Chase Bank USA, N.A.'s Loan Closing Instructions executed by the Settlement Agent.**

18. Original certificate regarding federal Income Tax Information Report, certifying that the Settlement Agent has prepared and will file IRS Form 1099-S (if applicable).

19. Original W-9 for each borrower.

20. Original typed 1003 Loan Application signed by borrower(s).

21. Original "As is" Statement.

22. One (1) copy of excuted Transfer of Servicing Disclosure Statement.

23. Original executed Notice of Assignment, Sale or Transfer of Servicing Rights for loans where the Broker is the Lender of record and/or the subject property is in New York State.

24. Original Allonge and certified true copy of the Assignment of Mortgage/DOT, executed by the Broker, for loans where the Broker is the Lender of record.

25. Original Borrowers Certification and Authorization.

26. Any documentation not previously referred to in these instructions or any documentation that would add significantly to the understanding of the closing.

27. One (1) legible copy of the Notice of Assignment, Sale or Transfer disclosure for Option 2 loans, which has been certified by the Settlement Agent as a true copy of the original.

28. One (1) legible copy of the Borrower(s) Power of Attorney document, if applicable, which has been certified by the Settlement Agent as a true copy of the original.

**The executed loan documents must be sent by overnight carrier to reach the following address within 24 hours of the borrower(s) signing the documents:**

Chase Bank USA, N.A.
601 Oakmont Lane 3rd Floor
Westmont, IL 60559
Contact: Closing Department
**Phone : (800) 457-9940**

The original final title insurance policy and recorded mortgage must be forwarded to Chase Bank USA, N.A., C/O Chase Home Finance, LLC, BC/Final Docs. 700 Kansas Lane Mail Code LA4-4106, Monroe, LA 71203, no later than seven (7) days from the date of recordation.

Instructions Prepared By:

Smith, Monica                                                        February 04, 2008

Acknowledgement and receipt: •
I HAVE READ THESE SETTLEMENT INSTRUCTIONS AND I UNDERSTAND THAT ANY VIOLATION OF THESE INSTRUCTIONS MAY RESULT IN A CLAIM BY THE LENDER AGAINST THE SETTLEMENT AGENT AND/OR THE TITLE INSURANCE COMPANY WHICH ISSUED ANY INSURED CLOSING LETTER OR IDEMNIFICATION LETTER.

FAILURE TO EXECUTE AND RETURN THIS DOCUMENT DOES NOT ABSOLVE YOU OF YOUR OBLIGATION TO CLOSE THE LOAN ONLY IN ACCORDANCE WITH THESE WRITTEN SETTLEMENT INSTRUCTIONS.

Settlement Agent                                    Date                    (Sign/Date/Return)

Page 6 of 6

Bear Stearns & Co.    1/25/2008 3:07:05 PM  PAGE    5/005   Fax Server

EMC

PAGE 4 OF PAYOFF STATEMENT
EMC LOAN NUMBER: 0011081783

PAYOFF STATEMENT                          Emc Mortgage Corporation
                                          2780 Lake Vista Drive
January 25, 2008                          Lewisville, Texas 75067

Loan No. 0011081783

Mortgagor's Name:  Dean Martin
Property Address:  252 E 46th St
                   Los Angeles CA 90011


        Flat/Other Penalty:       $     3,939.95



     XP994-035/r103107/(s1

800 State Highway 121 Bypass, Lewisville, Texas 75067-3884
Mailing Address: P.O. Box 203160 Lewisville, Texas 75029-3160

## LOAN SUMMARY

### SECTION A - LOAN SUMMARY

| | | | |
|---|---|---|---|
| Loan Number | 1050492737 | Loan Amount | $258,750.00 |
| Borrower | DEAN MARTIN | Lien Position | First, |
| Number of Borrowers | 1 | Loan Purpose | Refinance Cashout |
| Channel | Wholesale Broker | Property Type | 2 Family Residential |
| Branch Name | Westmont | Credit Type | Standard |
| Broker/Corr Name | City Capital Funding Inc | Doc Type | Full Doc |
| Option Type | 1 | Occupancy | Primary Owner Occupy |
| Broker Fax Number | (949) 252-2178 | Usable Credit Score | 522 |

| | | | |
|---|---|---|---|
| Primary AE | | | |
| Account Manager | | Date Purchased | N/A |
| Closer | Smith, Monica | Purchase Price | $0.00 |
| Application Date | 01/18/2008 | Appraised Value | $575,000.00 |
| Closing Date | 02/04/2008 | Appraisal Date | 10/22/2007 |
| Booked Date | 02/12/2008 | LTV | 45.000% |
| | | CLTV | 45.000% |
| | | DTI | 26.321% |

| | | | |
|---|---|---|---|
| Subject Street | 252 E 46TH ST | | |
| Subject City | Los Angeles | Decision | Approved |
| Subject State | CALIFORNIA | Credit Grade Submitted | M2 |
| Subject Zip | 90011-0000 | | |

| | | | |
|---|---|---|---|
| Cash to Pay Debts | $191,556.23 | | |
| Cash to borrower: | $56,943.34 | Credit Grade | M2 |
| Escrow for Taxes? | Yes | Underwriter | Homa, William |
| Escrow for Insurance | Yes | One - Up Reviewer | |
| | | Initial Decision Date | 01/22/2008 |
| Loan Amount | $258,750.00 | Final Approval Date | 02/01/2008 |
| Product | 30 Year Fixed | Originator Loan Number | N/A |
| Prepayment Term | 36 Months | Deal ID | N/A |
| Amortization Term | 360 | Funding Number | N/A |
| Note Rate | 8.950% | Portfolio Code | N/A |
| Rate Guarantee Expires | 02/22/2008 | Import Origination Date? | N/A |

### SECTION B - INCOME AND DEBT RATIOS

| DEBTS | | | INCOME | | |
|---|---|---|---|---|---|
| | Current | Previous | | | Current |
| First Mtg (P/I) | $2,072.66 | $2,080.00 | Borrower 1 | | $6,002.30 |
| Subordinate Financing | | | | | |
| RE Taxes | $134.49 | $132.34 | | | |
| Insurance | $39.72 | $50.00 | | | |
| HOA Fees | | | | | |
| Subject Net Rental | $750.00 | | | | |
| Total Housing Debt | $1,496.87 | | | | |
| Total Other Debt | $83.00 | | | | |
| | | | Net Rental Income | | |
| TOTAL GROSS DEBT | $1,579.87 | $2,262.34 | TOTAL QUALIFYING INCOME | | $6,002.30 |

| | | | | |
|---|---|---|---|---|
| Housing Ratio | 24.938% | | Housing Debt Change | Gross Debt Change |
| DTI | 26.321% | Dollar Amount: $15.47 | | $3,147.42 |
| Disposable Income   $ | 4,243.47 | Percentage:   0.684% | | 57.453% |

### SECTION C - COLLECTIONS, CHARGEOFFS, AND JUDGEMENTS

| | LAST 24 MONTHS | | OVER 24 MONTHS | | TOTAL | |
|---|---|---|---|---|---|---|
| | Number | Dollar Amount | Number | Dollar Amount | Number | Dollar Amount |
| Collections | | $0.00 | | $0.00 | | $0.00 |
| Judgements | | | | | | |
| Collections Left Open | | | | | | |
| Total | | $0.00 | | $0.00 | | $0.00 |

### SECTION D - CLOSING INFORMATION

| | | | |
|---|---|---|---|
| Lock Date | 02/01/2008 | | |
| Note Rate | 8.950% | Chase Fees | $6,093.00 |
| Note Margin | 0.000% | Fees Together on GFE | $15,425.43 |
| Prepayment Term | Standard 3YR | APR | 9.574% |
| Closing Date | 02/04/2008 | Yield Spread Amount | $0.00 |
| Funding Date | 02/11/2008 | Discount Points | 2.000 |

Loan Summary
C-6757B1    (7/07)    Page 1

*Date Printed: February 12, 2008*

Bear Stearns & Co.    ??/8/2007 12:39:43 PM    PAGE    5/005    Fax Server



PAGE 4 OF PAYOFF STATEMENT
EMC LOAN NUMBER: 0011081783

PAYOFF STATEMENT

October 08, 2007

Emc Mortgage Corporation
2780 Lake Vista Drive
Lewisville, Texas 75067

Loan No. 0011081783

Mortgagor's Name:    Dean Martin
Property Address:    252 E 46th St :
                     Los Angeles CA 90011

## DESCRIPTION OF PREPAYMENT PENALTY

PENALTY FOR PREPAYMENT GREATER THAN 20% OF THE ORIGINAL LOAN
AMOUNT DURING TWELVE MONTHS, 6 MONTHS INTEREST AT CURRENT RATE
RATE FOR A PERIOD OF THREE YEARS.

Flat/Other Penalty:    $    3,955.40

XP994-033/r022207/(S1

Bear Stearns & Co.       8/2007 12:35:23 PM   PAGE   4. 005   Fax Server



PAGE 3 OF PAYOFF STATEMENT
EMC LOAN NUMBER: 0011081783

<u>WIRING INSTRUCTIONS</u>:

                     CHASE BANK OF TEXAS, N.A.
                     ABA NO. 113000609

     FOR CREDIT TO:   EMC MORTGAGE CORP.
                     ACCOUNT NO. 07001224500
                     FOR PAYOFF OF LOAN NO. 0011081783
                     BORROWER'S NAME: Dean Martin

<u>MAILING INSTRUCTIONS</u>:

                     EMC MORTGAGE CORP.
                     ATTENTION: PAYOFF DEPT.
                     800 State Highway 121 Bypass
                     LEWISVILLE, TX 75067

        **Please be sure to include your EMC loan number
           and name on all correspondence and checks **

IF OWNERSHIP OF THIS PROPERTY IS TRANSFERRED, PLEASE PROVIDE THE
SELLER'S FORWARDING ADDRESS SO THAT EMC can furnish the applicable
recorded and/or year end IRS reporting information.

FHA LOANS:
As stated in the FHA Disclosure Notice, the payoff funds must
be received by EMC on the installment due date (normally the first
day of the month) to avoid the accrual of additional interest on
the prepayment (payoff prior to the loan maturity). . FHA loans accrue
interest on a monthly basis. . If EMC does not receive the funds
on or before the exact due date, you will be required to pay interest
on the amount prepaid until the next payment due date (normally the
last day of the month).

XP502-036/(S1

Two MacArthur Ridge, 909 Hidden Ridge Drive, Suite 200, Irving, Texas 75038
Mailing Address: P.O. Box 141358, Irving, Texas 75014-1358

P a - 2 Letters - page 0076 of 0100

## LOAN SUMMARY

### SECTION K - ENHANCEMENT/UPGRADE, EXCEPTION AND COMPENSATING FACTORS

| Type of Enhancement | Usable Credit Score |
|---|---|
| | |

| Type of Upgrade | Usable Credit Score |
|---|---|
| | |

Type of Exception          Exception Compensating Factors

### SECTION L - CONDITIONS

| | | P = Pending | C = Cleared | W = Waived | R = Rejected |

W STN V068787 1/22/2008 Broker must be approved and loan removed from "House Account".
W PTF V068787 1/22/2008 Escrow instructions/escrow amendment re:
W STN V068787 1/22/2008 Last 2 months bank statements and/or Verification of Deposit
demonstrating sufficient funds available for Closing
W STN V068787 1/22/2008 Written mortgage payoff stating max. 0 payment due at closing.
C PTF E121683 2/1/2008 Verbal verification of employment for each borrower performed by
Chase.
C PTD E121683 2/1/2008 Signed Rate Option Confirmation Form.
C PTF J946971 1/28/2008 Settlement Agent's wiring instructions on original letterhead with
original signature.
C STN V068787 1/31/2008 Last 2 years W-2's borrower(s).(legible copies are required because
as # looks different from 2006 to 2005.)
C PSH E121683 2/1/2008 Title company to provide marked up title commitment showing
additions, deletions and corrections from run down to be returned w/closing package.
C PSH E121683 2/1/2008 Fully executed Escrow amendment reflecting correct lender, rate and
terms
C PSH E121683 2/1/2008 Original File Including: Original & fully completed 1003 & federal
disclosures
C PSH E121683 2/1/2008 Loan can not fund without authorization from Closer. For funding
authorization: Fax signed HUD-1, TIL, Deed (if applicable), Affidavit Regarding Proof of
Identity, and the first and Signature Pages of the Note and Mortgage with all Riders, Notice of
Right to Cancel (if applicable) and any other file-specific conditions listed in the Closing
Instructions
C PSH E121683 2/12/2008 The California Fair Lending notice was returned, signed and dated
by the borrower(s) and placed in the file.
C STN V068787 1/22/2008 Subject to Flood Certification Determination.
C STN J946971 1/28/2008 Proof of Wind Damage Insurance is required with either 100%
N.A. ISAOA / ATIMA C/O CHASE HOME FINANCE, LLC. PO BOX 81507 ATLANTA, GA. 30366
C PTD J946971 1/28/2008 Closing Protection Letter from title underwriter insuring
settlement agent. CLAUSE SHOULD READ: CHASE BANK USA, N.A C/O CHASE HOME FINANCE 601 OAKMONT
LANE   SUITE 300 WESTMONT, IL. 60559
C STN V068787 1/31/2008 Recent paystub from borrower for Current Employer with postal
service.(p-stubs in file are outdated)
C PSH E121683 2/12/2008 Sign IRS form 4506T at time of closing
C PTF E121683 2/1/2008 Fax unsigned preliminary HUD-1 to Closer for approval before
closing. Loan can not close without HUD-1 approval
C PSH E121683 2/1/2008 Tax Information Sheet and Affidavit of Identity must be completed
and returned with closing documents.
C PSH E121683 2/12/2008 The California application addendum was returned, signed by the
borrower(s), and placed in the file.
C PSH E121683 2/12/2008 Do not stamp or type in the date on the Notice of Right to Cancel -
it must be hand-written.
C STN V068787 1/22/2008 Appraiser checked against Watch/ Review List
C PSH E121683 2/12/2008 Affidavit Regarding Proof of Identity to be completed and executed
by the Settlement Agent and returned with executed Closing Package. Settlement Agent to validate
all borrowers and/or title holders

See Addendum for Additional UW Conditions

*Date Printed: February 12, 2008*

Loan Summary
C-6757B1  (7/07)    Page 4

**EMC**
*Mortgage Corporation*

EMC Mortgage Corporation                          PAYOFF STATEMENT PAGE 1
800 State Highway 121 Bypass
Lewisville, Texas 75067
. . . . . . . . . . . . . . . .                   January 25, 2008

Created By Emc Program
Dean Martin
252 E 46th St
Los Angeles, CA 90011

                                  LOAN NO:  0011081783
                                  LOAN TYPE:  Conventional
RE:                               PROPERTY ADDRESS:
Dean Martin                             252 E 46th St
                                        Los Angeles CA 90011
252 E 46th St
Los Angeles, CA 90011
           ******************************************
           *   ONLY WIRE TRANSFERS OR CERTIFIED    *
           *   FUNDS ARE ACCEPTED TO PAY OFF A LOAN *
           ******************************************
THE INTEREST FIGURE IS GOOD THROUGH February 01, 2008.
. NOTE: Funds received after February 01, 2008 will require an additional
        $ 27.19 interest per Day until EMC Mortgage Corporation (EMC)
        receives sufficient funds to pay the loan in full.

THIS LOAN IS DUE FOR THE January 01, 2008 PAYMENT.
THE CURRENT TOTAL UNPAID PRINCIPAL BALANCE IS:      $     145,540.96
INTEREST AT  6.82000%                                      2,654.32
PREPAYMENT PENALTY FLAT FEE (See Page 4)                  3,939.95
ESCROW/IMPOUND OVERDRAFT                                    482.73
UNPAID LATE CHARGES                                          57.85
Fax Fee(s)                                                     .00
Recording Fee                                                9.00
Trustee Fees                                                  .00
Payoff Quote Fee                                           30.00
Proj Escrow                                                   .00
O/S Atty Fees                                                 .00
Release/Recon Fee                                          45.00
Deferred Interest                                             .00
 * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $     151,759.81


XP501-061-r103107/(S1

800 State Highway 121 Bypass, Lewisville, Texas 75067-3884
Mailing Address: P.O. Box 293150, Lewisville, Texas 75029-3150

Member
Mortgage Bankers
Association of America

1050492737

## ATTACHMENT TO SECTION G – LIABILITIES

| Debt Name | Type | Balance | Payment | Payoff | Included |
|-----------|------|---------|---------|--------|----------|

1050492737

## ATTACHMENT TO SECTION L - CONDITIONS

P = Pending          C = Cleared          W = Waived          R = Rejected

C  STN  J946971  1/28/2008   Proof of Hazard Insurance is required with either 100% Insurable
Value coverage or Replacement Cost coverage. Mortgage clause to read: Chase Bank USA, N.A.
ISAOA, ATIMA C/O CHASE HOME FINANCE, LLC.  PO BOX 81507 ATLANTA, GA. 30366
C  STN  J946971  1/28/2008   Fully complete & executed Mortgage Loan Origination Agreement.
C  PSH  E121683  2/1/2008    Payoff and close the following with loan proceeds: emc mortgage
$151,759.81,  Lincoln Capital 2nd mtg-$39,796.42
C  PSH  E121683  2/12/2008   Legal Description Exhibit "A" must be attached to the Mortgage/DOT
prior to recordation
C  PSH  E121683  2/12/2008
ALL PROPERTY TAXES DUE WITHIN 60 DAYS OF OUR CLOSING MUST BE PAID IN FULL AND REFLECTED ON HUD,
IF POC MUST PROVIDE PROOF WITH PRELIM HUD
C  STN  E121683  2/1/2008    Other:
C  STN  E121683  2/1/2008    Other:
C  STN  E121683  2/1/2008    Other:Loan is subject to review by an Underwriter prior to funding
C  PSH  E121683  2/12/2008   TITLE COMPANY TO PROVIDE MARKED UP TITLE COMMITMENT
C  STN  E121683  2/1/2008    Other:
C  PSH  E121683  2/12/2008   TITLE ESCROW COMPANY TO STAMP MORTGAGE/DOT TRUE & CERTIFIED AND
COMPLETE TRUSTEE INFORMATION (PLEASE MAKE SURE COUNTY IS ON PAGE 3, IF NOT PLEASE COMPLETE)
C  PSH  E121683  2/12/2008   MUST HAVE ORIGINAL PACKAGE BACK BEFORE THE DAY OF FUNDING OR WILL
NOT BE ABLE TO FUND
C  STN  V068787  2/1/2008    Other:Loan is subject to review by an Underwriter at time of final
approval
C  STN  V068787  1/31/2008   Other:2nd mtg history since inception at Lincoln Capital 0x30.
C  STN  V068787  1/31/2008   Other:Cert of occupancy required confirming 2 unit property as
title is showing as sfr.
C  PSH  E121683  2/12/2008   LINE 901 DATES NEED TO BE IN THE FORMAT OF FROM___TO 03/01/08
C  PSH  E121683  2/12/2008   LOAN CANNOT FUND WITHOUT AUTHORIZATION FROM MONICA L. SMITH (630)
986-2889
C  PSH  E121683  2/12/2008   PRELIMINARY HUD MUST BE APPROVED BEFORE FINAL TIL WILL BE EMAILED
OR RELEASE OF WIRE (ONCE APPROVED NO CHANGES CAN BE MADE NO EXCEPTIONS!!!)
C  STN  V068787  1/31/2008   Other:Corrected title policy with correct loan amount and proposed
insured clause.( Chase Bank USA, N.A. ISAOA, ATIMA)
C  PSH  E121683  2/1/2008    MUST SEND FUNDING DOCUMENTS ASAP AFTER SIGNING, IF DOCS
ARE NOT RECEIVED WITH 24HOURS AFTER THE SCHEDULED CLOSING TIME, CLOSING WILL CANCELLED
C  STN  V068787  1/31/2008   Other:Borrower's name discrepancy to be cleared with copy of social
security card and license with probable name affidavit to be signed.
C  STN  V068787  1/31/2008   Other:Loan Subject to Risk Assessment Analysis.
C  STN  V068787  1/31/2008   Other:Loan Subject to Property Risk Assessment Analysis.
C  STN  V068787  1/31/2008   Other:Allotment on Borrowers postal paystub must be explained(if
loan or support payment, must be incl in dti subject to requal)
C  STN  J960013  2/1/2008    Other:Sign IRS form 4506-T (signed but not executed prior to final
approval).
C  STN  V068787  2/1/2008    Other:Updated payoffs for 1st and 2nd required.(Need proof January
1 EMC Mtg is paid as agreed and updated payoff required for EMC reflecting January's payment)
C  STN  E121683  2/1/2008    Other:
C  STN  E121683  2/1/2008    Other:
C  STN  E121683  2/1/2008    Other:
C  STN  E121683  2/1/2008    Other:
C  STN  E121683  2/1/2008    Other:
C  STN  V068787  1/31/2008   Other:Hardcopy appraisal with legible photos and comp photos.
C  PSH  E121683  2/12/2008   Other:Updated EMC payoff required prior to fund as payment just
made 1/31.
C  STN  V068787  1/22/2008   Preliminary Title/title commitment w/no liens judgements or
delinquent taxes against borrower.
C  STN  V068787  1/22/2008   Original, recent (<120 days),  Appraisal which supports estimated
property value.  Include digital signature addendum if appropriate. Note:  A Field Review may be
required to validate the quality of original.
C  STN  V068787  1/22/2008   Copy of Appraiser's current license.



4665 MacArthur Court Suite 100
Newport Beach, CA 92660
Phone: (949) 225-1200
Fax: (949) 225-1559

### REFINANCE ESCROW INSTRUCTIONS

**Jesus Flores**                              Date: May 11, 2007
Escrow Officer                          Escrow No.: 90609JF-923-JF3

I/We will deliver to you any instruments which this escrow requires, fully executed, all of which you are instructed to use provided that on or before February 8, 2008 you are in a position to cause a policy of title insurance to be issued by Investors Title Company with a liability in an amount of $258,750.00 prior to close of escrow, covering property described as:

**BORROWER STATES THAT THE PROPERTY ADDRESS IS: 252 East 46th Street, Los Angeles, CA 90011**

**SHOWING TITLE VESTED IN: Dean Martin, an unmarried man**

**FREE FROM ENCUMBRANCES EXCEPT:**

(1)     General and special Taxes for the fiscal year, including property taxes and/or supplemental taxes assessed pursuant to the provisions of Chapter 498, Statutes of the State of California.

(2)     Covenants, conditions, restrictions, reservations, rights, rights of way, and easements, and any oil, gas, or mineral reservations now of record, if any.

(3)     First Deed of Trust to record securing a note.

**INSTRUCTIONS:**

A.      FINANCE: First Deed of Trust to file, and note secured thereby in the amount of $258,750.00 in favor of lender of Borrower's choice as per their terms, to be obtained by Borrower at Borrower's expense. Said loan to be at the best prevailing rate and terms. Borrower's signature on said documents shall be indication of their approval of all terms and conditions contained therein and Escrow Holder's authorization for the use of same.

B.      BORROWER to furnish, when required, a new fire insurance policy satisfactory to the new lender and authorizes payment of bill, if presented in escrow.

C.      BORROWER authorizes and instructs Escrow Holder to pay closing costs including but not necessarily limited to: Loan origination fee as required by Lender, ALTA title policy, premium for new fire insurance policy or increase in premium for existing coverage, escrow, recording fees, and any other charges as may be required by Lender.

D.      ESCROW HOLDER is authorized to obtain and pay demands from existing Trust Deed holder(s) of record, to place title as required above.

E.      NOTICE TO BORROWER(s):  Borrowers are aware that the title insurance policy being issued in this escrow is for the benefit of the Lender only, and not for the benefit of the Borrowers.  In the event the Lender requires, or Borrowers desire to change the existing vesting on title, Escrow Holder advises you to seek legal counsel pertaining to same.  If you choose to obtain Title Insurance on behalf of the Borrower(s), you must request same in writing directed to the Escrow Holder.  If no written request is received by Escrow Holder before the close of escrow, Escrow Holder shall not obtain Title Insurance on behalf of the Lender and is released from any and all liability in connection with same.

F.      BORROWER is aware that Lender will not sign these instructions and that Lender will deposit separate instructions into escrow.  Escrow Holder is hereby authorized and instructed to comply with such instructions and requirements by Lender.

**END OF INSTRUCTIONS**

Borrower's Initials: _____          Borrower's Initials: _____/_____

8socrefin Rev. (04/09/07)

Date: May 11, 2007

TO: **INVESTORS TITLE COMPANY**

RE: ESCROW NO: 90609JF

BORROWER: Dean Martin

**ATTENTION NOTARY PUBLIC, THE FOLLOWING SIGNOFF PROCEDURE MUST BE FOLLOWED:**

- EACH BORROWER MUST RECEIVE TWO (2) COMPLETED AND SIGNED  NOTICE OF RIGHT TO CANCEL FORMS AT TIME OF SIGNING

- A COPY OF ALL LOAN DOCUMENTS MUST BE GIVEN TO THE BORROWER AT TIME OF SIGNING

**THE UNDERSIGNED NOTARY PUBLIC ACKNOWLEDGES COMPLIANCE WITH THIS INSTRUCTION.**

_____
SIGNATURE OF NOTARY PUBLIC

_Edgar Urias_
PRINT NAME OF NOTARY PUBLIC

DAYTIME PHONE #: _714-369-6078_

ADDRESS: _1519 S. Orange Ave , Fullerton, Ca._
                                                    _92833_

DATE: _2-4-08_

4665 MacArthur Court  Suite 100  Newport Beach, CA  92660  •  (949) 225-1200  •  Fax (949) 225-1559

notarycert.doc (rev. 03/22/08)

Case 2:26-cv-00... Disbursement The undersigned hereby certifies that no liens, judgments Document 1... Page 33 of 61   Page
disclosed to Inve...   Title Company, and that NO additional liens or obligations exist again... ...s, except those disclosed on the
preliminary repo...   enced above, which I/we have examined.

The undersigned hereby certifies that NO construction, alterations, additions to, or repair of a building or structure is in process or has recently been completed.

Therefore, the undersigned agrees to hold harmless and indemnify Investors Title company and it underwriter against all loss, damage, attorney's fees and other costs and charges which Investors Title Company or its underwriter may sustain in consequences of having issued such policy or policies of Title Insurance, and not having taken exception to an item which should have been disclosed, but for whatever reason, was not.

22. **Preliminary Change of Ownership (PCOR Statement):** Buyer, Seller and/or borrower will hand you before close of escrow a completed "Preliminary Change of Ownership" Statement which you are instructed to file accompanied by the Transfer/Grant Deed with the County Recorder; or in the absence or rejection thereof you will pay from Borrower/Buyer funds an additional $20.00 as requested by the County Recorder . It is understood that Escrow does not have sufficient information to complete this form and will not be required to furnish information therefore. In the event the Preliminary Change of Ownership Statement is rejected, Borrower/Buyers understand that they will be required to file a Change of Ownership Statement that should be mailed to them with the recorded Transfer/Grant Deed from the County Recorder's Office, after close of escrow. Buyers are aware that by law this requirement must be met within 45 days from recordation of their Transfer/Grant Deed or they may be assessed additional penalties.

23. **Escheat to the State of California:** If for any reason, funds retained or remain in escrow for more than 3 years after the last contact date with the party(ies) in which funds were disbursed or instructed to be released or there was a dispute regarding the disbursement of funds, without escrow receiving a final court order directing the disbursement of funds, and the party(ies) can not be located, then you are to escheat the remaining funds to the State controller, as mandated by the State of California.

24. **We are Committed to Safeguarding Customer Information:** In order to better serve your needs now and in the future, you have provided or will provide us with certain information. We understand that you may be concerned about what we will do with such information — particularly any personal or financial information. We agree that you have a right to know how we will utilize personal information you provided to us.

    **Applicability**
    This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

    **Types of Information**
    Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect and rely upon include:
    Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or other means;
    Information about your transactions with us, our affiliated companies, or other area; and
    Information we receive from a consumer-reporting agency.

    **Use of Information**
    The information you provide us is for our own legitimate business purposes and not for the benefit of any affiliated or nonaffiliated party. Therefore, we will not release your information to affiliated and nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purposes, such as quality control efforts or customer analysis. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

    **Former Customers** Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

    **Confidentiality and Security**
    We will use our best effort to ensure that no unauthorized parties have access to any of our information. We restrict access to nonpublic personal information about you to those individuals and entities that need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibility and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

25. **Maintenance/Custodian or Funds held fee:** If for any reason, funds are retained or remain in escrow more than 90 days after the closing date, you may, at escrow holders option, deduct there from a reasonable monthly charge as custodian thereof of not less than $25.00 per month. Instruments that are not negotiated within six months are considered stale dated and are considered to be held in escrow and are subject to the fees described above to be assessed, from time to time, as deemed appropriate by escrow holder , from the date of the instrument.

26. **Application of Payoff Funds:** The parties herein understand that interest continues to accrue against existing liens until such time as the beneficiary is in receipt of the payoff funds. Borrower remains responsible for making payments, when due, to the Beneficiary. Should a check or wire be deemed unacceptable by lenders, creditors, lien holders or beneficiaries of Deeds of Trust, you are authorized to act on our behalf in communicating with the lender, in every way, including, but not limited to requesting the funds, as well as any balance in an impound account, be applied towards the balance due.

    Furthermore, I/We authorize and instruct the creditors contacted by Alliance Title to release any and all information concerning our accounts in order for Investors Title, to pay amounts instructed by the new lender funding this transaction or as shown on the estimated or closing statement issued by Investors Title in connection with these general provisions. Creditors are to accept these instructions as my/our full authorization for the release of said information with no further authorization from the undersigned.

### END "GENERAL PROVISIONS"

Borrower's Initials: _____          Borrower's Initials: _____ / _____

Asocrefin Rev. (04/09/07)

SO Pa... 2 Letters - page 0007 of 0100



**Lincoln Capital**
Westland Financial Group
(310) 281-4756 & fax

10573 W. Pico Blvd.; #193
W. Los Angeles, CA 90064

Jan. 25, 2008

to: Alliance Title

attn: Jesus Flores, Escrow Officer

re: Martin, Dean    Escrow No. 90609JF-903-JF

This is in response to your request for payoff.

| | |
|---|---|
| principal balance 1/6/08 | $37463.94 |
| interest through 1/25/08 | 129.50 |
| prepayment penalty | 2097.98 |
| demand fee | 30.00 |
| previous demand fee | 30.00 |
| reconveyance fee | 45.00 |
| total | $39796.42 |

Please add interest per diem of $14.38. If this is not paid off on or before February 13th. please also add late fee of $46.91. We will issue a full recon. within two weeks after receiving payoff check.

This demand expires on February 25th.

Respectfully,

*Alan Miles*

Alan Miles,
Account Manager

# LOAN SUMMARY

## SECTION F - ASSETS

| Borr # | Asset Name | Type | Balance | Verified |
|---|---|---|---|---|
| 1 | | 401K | | $54,376.00 N |

Total Assets Verified: $0.00

## SECTION G - LIABILITIES

| Debt Name | Type | Balance | Payment | Payoff | Included |
|---|---|---|---|---|---|
| EMC MORTGAGE | Mortgage | $151,759.81 | 1,115.00 | P | N |
| TNB - TARGET | Revolving | $324.00 | 45.00 | N | Y |
| HSBC BANK | Revolving | $385.00 | 20.00 | N | Y |
| HSBC BANK | Revolving | $430.00 | 18.00 | N | Y |
| Lincoln Capital | Mortgage | $39,796.42 | 2,016.95 | P | N |

Total Other Debt $83.00

## SECTION H - MORTGAGE HISTORY
### # Months Delinquent

| Rolling 30 Day Method | 30 | 60 | 90 | 90+ |
|---|---|---|---|---|
| Last 12 Months Mortgage | 1 | -1 | -1 | -1 |
| Last 24 Months Mortgage | 0 | 0 | 0 | 0 |

| Standard Method | 30 | 60 | 90 | 90+ |
|---|---|---|---|---|
| Last 12 Months Mortgage | 1 | -1 | -1 | -1 |
| Last 24 Months Mortgage | 0 | 0 | 0 | 0 |

Current Mortgage Status Due For:
Total Number of Mortgages:

## SECTION I - CONSUMER HISTORY

| | As Agreed | % of Total | 30 | % of Total | 60 | % of Total | 90 | % of Total | 90+ | % of Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Last 12 Months Major | 0 | 0 % | -1 | 25 % | -1 | 25 % | -1 | 25 % | -1 | 25 % |
| Last 24 Months Major | 0 | 0 % | 0 | 0 % | 0 | 0 % | 0 | 0 % | 0 | 0 % |
| Last 12 Months Minor | 0 | 0 % | 0 | 0 % | 0 | 0 % | 0 | 0 % | 0 | 0 % |
| Last 24 Months Minor | 0 | 0 % | 0 | 0 % | 0 | 0 % | 0 | 0 % | 0 | 0 % |
| Total Accounts | 0 | 0 % | -1 | 25 % | -1 | 25 % | -1 | 25 % | -1 | 25 % |

## SECTION J - BANKRUPTCY AND FORECLOSURE

Bankruptcy Type 0
Most Recent Discharge Date
Number of Months

Bankruptcy Open No
Total Number of Bankruptcies 0

Most Recent Foreclosure Date
Number of Months

Foreclosure Open No
Total Number of Foreclosures 0

Loan Summary
C-6757BI    (7/07)    Page 3

*Date Printed: February 12, 2008*

Bear Stearns & Co.   10/8/2007 12:39:43 PM   PAGE   3/005   Fax Server

 EMC

PAGE 2 OF PAYOFF STATEMENT
EMC LOAN NUMBER: 0011081783

After November 01, 2007, a new payoff quote will be required.  The payoff reflected above is based on presentment and acceptance of all payments posted.  The mortgagor should not stop payment on any payment remitted regardless of the payment method.  IF EMC is notified of a stop payment or returned check, the lien will not be released, the applicable fees may be assessed, and the amount required to pay the loan in full will be adjusted accordingly.

THE ABOVE FIGURES ARE VALID AS OF THE DATE ISSUED ONLY.  Issuance of this statement does not suspend the account activity pending a payoff. The contractual requirement to make the mortgage payments when they are due remains in effect.  A LATE CHARGE OF $ 48.99 WILL BE ASSESSED 15 days after any payment is due and will be added to the amount required to pay off the loan.

PAYOFF FUNDS MUST BE SUFFICIENT TO PAY THE LOAN IN FULL, including all escrow disbursements, accrued interest, prepayment penalties, principal, fees, and other servicing charges.  If the funds received are not sufficient to meet the payoff requirements, or if they are not in the form of a wire transfer or certified funds, they will be returned to the issuing party.

The escrow balance is subject to change on a daily basis, as normal deposits and/or disbursements occur.  The escrow balance will be refunded within 30 days after payoff.  The escrow balance may not be used toward the payoff of the loan.  The current escrow balance is $ 770.98.

If EMC is currently drafting your checking or savings account for your mortgage payments, the drafts will continue until EMC receives your written authorization to terminate the drafts.  Please allow at least 15 days for EMC to complete the draft termination process.

EMC DOES NOT PROVIDE VERBAL PAYOFF QUOTES; however, to order a new or updated payoff quote to be faxed or mailed within one (1) business day, please use EMC's AUTOMATED INFORMATION LINE AT 1-800-723-3004. You may also fax your request to EMC at 1-469-759-4708 or mail it to P.O. Box 293150, Lewisville, TX 75029-3150 — Attention: Payoff Department.

Please note, ONLY WIRE TRANSFER OR CERTIFIED FUNDS (cashier's checks or money orders) are accepted to pay off a loan.   TO RECEIVE SAME DAY CREDIT, PAYOFF FUNDS MUST BE RECEIVED BY 2:00PM CENTRAL TIME.  PAYOFFS RECEIVED AFTER 2:00PM CENTRAL TIME WILL ACCRUE AN ADDITIONAL DAY OF INTEREST.

XP502-036/(S1

Two MacArthur Ridge, 909 Hidden Ridge Drive, Suite 200, Irving, Texas 75038
Mailing Address: P.O. Box 141358, Irving, Texas 75014-1358

1050492737

## FUNDING WORKSHEET

Closing Date: February 04, 2008                    Purpose: Refinance Cashout

Funding Date: February 11, 2008                    Product: 30 Year Fixed

Date of 1st Payment: April 01, 2008                Occupancy: Primary Owner Occupy

State: CALIFORNIA                                  Note Rate: 8.950%

Borrower: DEAN MARTIN                              Closer Smith, Monica

| | |
|---|---|
| Loan Amount: | 258,750.00 |
| Per Diem Interest: | 1,205.55 = 63.45 X 19 Days |
| Processing Fee: | 500.00 |
| Doc Prep Fee: | 0.00 |
| Doc Redraw Fee: | 0.00 |
| Underwriting Fee: | 300.00 |
| Tax Service Fee: | 84.00 |
| Flood Certif. Fee: | 9.00 |
| Flood Life-of-Loan Fee: | 5.00 |
| Courier Fee: | 20.00 |
| Other Fees: | 0.00 |
| Discount Points Amount: | 5,175.00 |

| | |
|---|---|
| Total Escrow Reserves: | 0.00 (Includes Aggregate Escrow Adjustment, if any) |
| Subtotal (Net proceed): | 251,451.45 |
| Yield Spread Amount | 0.00 |
| Total Wire Amount: | 251,451.45 |

(Net Funding)

BC-6768        (1/01)

Borrower # 1

Name: DEAN MARTIN

ID #:125

Current Address: 252 E 46TH ST, Los Angeles, CA 90011

Age: 0                          Marital Status: Unmarried

US Citizen: Yes                 Rent/Own: Own                          Yrs in Res: 21.00

Usable Credit Score: 522        Equifax: 522                           Trans Union: 536                    Experian: 495

| Employer Name | Type | Yrs | Status | NonTaxable | Primary | Self Empl | Include | Monthly Income |
|---|---|---|---|---|---|---|---|---|
| METROPOLITAN TRANSPO | Base Empl Income | 6 | C | N | N | N | Y | $1,333.30 |
| US POSTAL SERVICE | Base Empl Income | 25 | C | N | Y | N | Y | $4,669.00 |

TOTAL QUALIFYING INCOME: $6,002.30   (If NonTaxable = Y: Monthly Income Grossed Up 125%)

Bear Stearns & Co.    1/25/2008 3:07:05 PM    PAGE . 4/005    Fax Server



PAGE 3 OF PAYOFF STATEMENT
EMC LOAN NUMBER: 0011081783

WIRING INSTRUCTIONS:

CHASE BANK OF TEXAS, N.A.
ABA NO. 113000609

FOR CREDIT TO:    EMC MORTGAGE CORP.
ACCOUNT NO. 07001224500
FOR PAYOFF OF LOAN NO. 0011081783
BORROWER'S NAME: Dean Martin

MAILING INSTRUCTIONS:

EMC MORTGAGE CORP.
ATTENTION: PAYOFF DEPT.
800 State Highway 121 Bypass
LEWISVILLE, TX 75067

**Please be sure to include your EMC loan number
and name on all correspondence and checks **

IF OWNERSHIP OF THIS PROPERTY IS TRANSFERRED, PLEASE PROVIDE THE
SELLER'S FORWARDING ADDRESS SO THAT EMC can furnish the applicable
recorded and/or year end IRS reporting information.

FHA LOANS:
As stated in the FHA Disclosure Notice, the payoff funds must
be received by EMC on the installment due date (normally the first
day of the month) to avoid the accrual of additional interest on
the prepayment (payoff prior to the loan maturity).  FHA loans accrue
interest on a monthly basis.  If EMC does not receive the funds
on or before the exact due date, you will be required to pay interest
on the amount prepaid until the next payment due date (normally the
last day of the month).

XPS02-037-r103107/(S1

800 State Highway 121 Bypass, Lewisville, Texas 75067-3884
Mailing Address: P.O. Box 790150, Lewisville, Texas 75029-3150

Member
Mortgage Bankers
Association of America



**Lincoln Capital**
Westland Financial Group
(310) 281-9759 & fax

10323 W. Pico Blvd. #193
W. Los Angeles, CA 90064

Jan. 25, 2008

to: Alliance Title

attn: Jesus Flores, Escrow Officer

re: Martin, Dean    Escrow No. 90609JF-803-JF

This is in response to your request for payoff.

| | |
|---|---|
| principal balance 1/6/08 | $37453.94 |
| interest through 1/25/08: | 129.50 |
| prepayment penalty | 2097.98 |
| demand fee | 30.00 |
| previous demand fee | 30.00 |
| reconveyance fee | 45.00 |
| total | $39796.42 |

Please add interest per diem of $14.38. If this is not paid off on or before February 13th, please also add late fee of $46.91. We will issue a full recon. within two weeks after receiving payoff check.

This demand expires on February 25th.

Respectfully,

Alan Miles,
Account Manager

#45

Bear Stearns & Co.    78/2007 12:39:43 PM   PAGE   2/005   Fax Server



EMC Mortgage Corporation
800 State Highway 121 Bypass
Lewisville, Texas 75067

PAYOFF STATEMENT PAGE 1

October 08, 2007

Created By Emc Program
Dean Martin
252 E 46th St
Los Angeles, CA 90011

LOAN NO:  0011081783
LOAN TYPE:  Conventional
PROPERTY ADDRESS:
     252 E 46th St
     Los Angeles CA 90011

RE:
Dean Martin

252 E 46th St
Los Angeles, CA 90011

```
***********************************************
     *    ONLY WIRE TRANSFERS OR CERTIFIED       *
     *    FUNDS ARE ACCEPTED TO PAY OFF A LOAN    *
     ***********************************************
```

THE INTEREST FIGURE IS GOOD THROUGH November 01, 2007.
  NOTE: Funds received after November 01, 2007 will require an additional
     $ 27.28 interest per Day until EMC Mortgage Corporation (EMC)
     receives sufficient funds to pay the loan in full.

THIS LOAN IS DUE FOR THE October 01, 2007 PAYMENT.
THE CURRENT TOTAL UNPAID PRINCIPAL BALANCE IS:

| | | |
|---|---|---|
| INTEREST AT  6.82000% | $ | 145,994.00 |
| PREPAYMENT PENALTY FLAT FEE (See Page 4) | | 1,659.46 |
| UNPAID LATE CHARGES | | 3,955.40 |
| Fax Fee(s) | | 63.28 |
| Recording Fee | | .00 |
| Trustee Fees | | 9.00 |
| Prop Insp | | .00 |
| Proj Escrow | | .00 |
| O/S Atty Fees | | .00 |
| Release/Recon Fee | | .00 |
| Deferred Interest | | 45.00 |
| * * * * TOTAL AMOUNT TO PAY LOAN IN ____ | | .00 |
| | | 151,720.13 |

XP501-060-r022807/(S1



**Lincoln Capital**
Westland Financial Group
(310) 281-4756 & fax

10573 W. Pico Blvd.; #193
W. Los Angeles, CA 90064

Oct. 9, 2007  (2) pgs.

to: Alliance Title

attn: Jesus Flores, Escrow Officer

re: Martin, Dean        Escrow No. 90609JF-903-JF

This is in response to your attached request for payoff,

| | |
|---|---|
| principal balance 9/9/07 | $37701.64 |
| interest through 10/9/07 | 453.50 |
| prepayment penalty | 2109.79 |
| demand fee | 30.00 |
| reconveyance fee | 45.00 |
| total | $40339.93 |

Please add interest per diem of $14.45. If this is not paid off on or before October 13th, please also add late fee of $46.91. We will issue a full recon. after receiving payoff check, probably within 2 weeks.

This demand expires on November 9th.

Respectfully,

*Alan Miles*

Alan Miles,
Account Manager

MORTGAGOR: DEAN MARTIN

LOAN NO: 1050492737          PROPERTY: 252 E 46TH ST
                                      Los Angeles, CA  90011-0000

================================================================
================================================================

# NOTICE OF RIGHT TO CANCEL

Your Right to Cancel

You are entering into a transaction that will result in a mortgage/security interest in your home.  You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occur last:

(1) The date of the transaction, which is   __February 04, 2008__   ; or

(2) The date you received your Truth-In-Lending disclosures; or

(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/security interest is also cancelled.  Within twenty (20) calendar days after we receive your notice, we must take steps necessary to reflect the fact that the mortgage/security interest in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above,  but you must then offer to return the money or property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

How to Cancel
If you decide to cancel this transaction, you may do so by notifying us in writing at:

Chase Bank USA, N.A.

601 Oakmont Lane 3rd Floor
Westmont, IL 60559

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of February 07, 2008 (or midnight of the third business day following the latest of the three events listed above).  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL:

Signature _____   Date_____

I ACKNOWLEDGE RECEIPT OF TWO COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

Signature _Dean Martin_____   Date _2-4-08_____

GENERAL NOTICE OF RIGHT TO CANCEL
C-6098 (1/97) (Replaces Rev. 12/95) Page 1 of 1

Your lender is: **Chase Bank USA, N.A.**

MORTGAGOR: DEAN MARTIN

LOAN NO: 1050492737       PROPERTY: 252 E 46TH ST
                                      Los Angeles, CA  90011-0000

=========================================================================
=========================================================================

# NOTICE OF RIGHT TO CANCEL

### Your Right to Cancel

You are entering into a transaction that will result in a mortgage/security interest in your home. You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occur last:

(1) The date of the transaction, which is    __February 04, 2008__    ; or

(2) The date you received your Truth-In-Lending disclosures; or

(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/security interest is also cancelled. Within twenty (20) calendar days after we receive your notice, we must take steps necessary to reflect the fact that the mortgage/security interest in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

### How to Cancel

If you decide to cancel this transaction, you may do so by notifying us in writing at:

Chase Bank USA, N.A.

601 Oakmont Lane 3rd Floor
Westmont, IL 60559

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of **February 07, 2008** (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL:

Signature _____    Date_____

I ACKNOWLEDGE RECEIPT OF TWO COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

Signature _Dean Martin_____    Date _2-04-08_____

GENERAL NOTICE OF RIGHT TO CANCEL
C-6098 (1/97) (Replaces Rev. 12/95) Page 1 of 1

n - 2 Letters - page 0058 of 0100

1050492737

## FUNDING WORKSHEET

| | |
|---|---|
| Closing Date: February 04, 2008 | Purpose: Refinance Cashout |
| Funding Date: February 11, 2008 | Product: 30 Year Fixed |
| Date of 1st Payment: April 01, 2008 | Occupancy: Primary Owner Occupy |
| State: CALIFORNIA | Note Rate: 8.950% |
| Borrower: DEAN MARTIN | Closer: Smith, Monica |

| | |
|---|---|
| Loan Amount: | 258,750.00 |
| Per Diem Interest: | 1,205.55 = 63.45 X 19 Days |
| Processing Fee: | 500.00 |
| Doc Prep Fee: | 0.00 |
| Doc Redraw Fee: | 0.00 |
| Underwriting Fee: | 300.00 |
| Tax Service Fee: | 84.00 |
| Flood Certif. Fee: | 9.00 |
| Flood Life-of Loan Fee: | 5.00 |
| Courier Fee: | 20.00 |
| Other Fees: | 0.00 |
| Discount Points Amount: | 5,175.00 |

| | |
|---|---|
| Total Escrow Reserves: | 0.00 (includes Aggregate Escrow Adjustment, if any) |
| Subtotal (Net proceed): | 251,451.45 |
| Yield Spread Amount | 0.00 |
| Total Wire Amount: | 251,451.45 |
| | (Net Funding) |

BC-6768     (1/01)

41370

REACTIVE
WIRE

**First American Title Insurance Company**

Friday, January 25, 2008 2:38:14 PM

CHASE BANK USA, N.A. , C/O CHASE HOME FINANCE
602 OAKMONT LANE
SUITE #300
WESTMONT, IL 60559

RE: Closing Protection Letter

Name of Issuing Agent, Approved Attorney or Approved Closing Vendor (hereafter, "Issuing Agent", "Approved Attorney", or "Approved Closing Vendor" as the case may require):

Inventors Title Company
4400 MacArthur Court
Suite 100
Newport Beach, CA 92660
(949)-225-1200

Transaction (hereafter, "the Real Estate Transaction"):

Borrower: DEAN MARTIN
Property Address: 252 EAST 46TH STREET, LOS ANGELES, California 90011

Reference No. LOAN #1050482737 ESCROW #90609JF

Dear Sir or Madam:

You have requested title insurance of First American Title Insurance Company (the "Company") for your protection in connection with the closing of the Real Estate Transaction conducted by the Issuing Agent, Approved Attorney or Approved Closing Vendor in which you are to be the: (a) lessee of an interest in land, (b) purchaser of an interest in land, or (c) lender secured by a mortgage (including any other security instrument) of an interest in land, its assignees or a warehouse lender, If the aggregate of all funds you transmit to the Issuing Agent, Approved Attorney or Approved Closing Vendor for the Real Estate Transaction does not exceed five million dollars $5,000,000.00, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closing when conducted by the Issuing Agent, Approved Attorney or Approved Closing Vendor and when such loss arises out of:

1. Failure of the Issuing Agent, Approved Attorney or Approved Closing Vendor to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or

2. Fraud, dishonesty or negligence of the Issuing Agent, Approved Attorney or Approved Closing Vendor in handling your funds or documents in connection with such closings to the extent such fraud, dishonesty or negligence relates to the status of the title to said interest in land or to the validity, enforceability, and priority of the lien of said mortgage on said interest in land.

If you are a lender protected under the foregoing paragraph, your borrower, your assignee and your warehouse lender in connection with a loan secured by a mortgage shall be protected as if this letter were addressed to them.

The monetary limitation in this letter shall not apply to individual mortgage loan transactions on individual one-to-four-family residential properties (including residential townhouse, condominium and cooperative apartment units). In the event that funds in excess of the monetary limitation will be transmitted and you desire the protections afforded by this letter, please contact the Company.

CONDITIONS AND EXCLUSIONS

1. The Company will not be liable to you for loss arising out of:

1 First American Way • Santa Ana, California 92707

Borrower: DEAN MARTIN

## Settlement Instructions & Procedures

With respect to this loan, the Settlement Agent represents the interest of Chase Bank USA, N.A. and is required to complete the following:

1.  Ensure Chase Bank USA, N.A. is in receipt of an indemnification letter from the title underwriter insuring Chase Bank USA, N.A. (Errors and Omissions Policy in New York State) prior to closing loan and disbursing funds.

2.  Fill in all blank spaces on any loan instrument/document prior to requesting the signatures of the mortgagor(s).

3.  Review all loan instruments/documents for accuracy and completeness.

4.  Explain any loan instrument/document not understood by the mortgagor(s).

5.  Obtain the correct signature(s) of the mortgagor(s) as required on all documentation (including non-borrower owners or non-borrower spouses with dower, curtesy, homestead or community property interests, if required by state law.)

6.  Ensure documents reflect all borrower(s) and titleholder(s) names as shown on the first page of the closing instructions and the enclosed security instruments.

7.  Ensure all parties sign their names as typed, (i.e., middle initial, suffixes), etc. It is your responsibility to ensure that the Borrower(s) and Titleholder(s) sign appropriately.

8.  Ensure that all notary information has been completed with a seal and expiration date. The completed notary information must also appear on all copies.

9.  Supply the borrower(s)/titleholder(s) with completed copies of all loan documentation due them.

10.  Explain the necessity of making the payments as required and notify them of the date the first payment is due.

11.  Explain to the mortgagor(s) the purpose of the Mortgagee Title Insurance Policy and acquaint them with the availability of Owner's Title Insurance.

12.  Ensure the mortgagee reads as Chase Bank USA, N.A. on all legal documents.

13.  Ensure there are no building violations of record or open building permits for incomplete work or completed work not yet inspected.

14.  Ensure all Liens of Record are paid in full at Closing.

15.  Obtain accurate payoff information. All payoff figures provided by Chase are approximate.

16.  Ensure Chase is in first lien position on subject property.

17.  Hazard Insurance: Collect the original policy from the borrower(s). The hazard insurance policy must have an effective date from the closing date through the first payment date and insure the lender for not less than 100% of the insurable value of the improvements as established by the insurer or replacement cost coverage (or similar language) as stated on the declarations page. (The replacement cost value is the insurer's estimate of the cost to replace a home, excluding the land value). In addition, the policy may not exclude wind coverage or supplemental insurance will be required. The first year's premium is to be paid prior to closing and a paid receipt must be attached to the original policy. Insurance must be placed with a company having a Best's Rating of at least B+. If the loan is for a condominium unit, a certified copy of the master policy and original unit certificate is required. Refinances, minimum of 90 days remaining term. Please show the first year's premium as a POC item on the HUD-1. The loss payee should read, Chase Bank USA, N.A., its successors and/or assigns, ATIMA C/O Chase Home Finance, LLC, P O Box 81507, Atlanta, GA 30366.

18.  Flood Insurance: If required, there must be evidence of flood insurance that adequately covers the lender for the lower of the mortgage amount but at least 80% of the insurable value as defined by the hazard policy, the maximum amount of coverage available through the NFIP, or replacement cost coverage (or similar language) as stated on the declarations page. An application for a policy accompanied by a paid receipt for the annual amount is acceptable. A copy of the paid receipt for at least one year's premium must be attached. Chase Bank USA, N.A. must be named as mortgagee in the same manner specified above for hazard insurance.

19.  Escrow Reserves:  <__> If this space is checked, escrow reserves are to be collected in accordance with the instruction on page2.

20.  Unpaid real estate taxes, water, sewer and ground rents due within 60 days of closing must be paid at closing. It is the responsibility of the settlement agent to ensure payment.

21.  Taxes currently due and payable must be paid at closing. If paid before closing, proof of such payment (copy of tax receipt or cancelled check) must be provided at closing.

Borrower: DEAN MARTIN                                    Loan #: 1050402737

Chase Bank USA, N.A. has verified a down payment of $0.00 and sales price of $0.00. Any variance in these figures or any other credits shown on the HUD-1, line 201 - 209, unless otherwise noted, must have written approval by Chase Bank USA, N.A. prior to closing the loan. If you, as the Settlement Agent, have actual knowledge that the source of funds is other than as described in the Closing Instructions, loan proceeds may not be disbursed and the mortgage lender must be contacted for further instructions.

Where you, as settlement agent, are charging a settlement/closing fee, Chase policy requires that the fee be included in the Truth in Lending disclosures as a pre-paid finance charge. The fee you are collecting is noted on the these Closing Instructions and may not be changed without Lender's consent.

Settlement Agents are prohibited from charging anyone for the cost associated with the preparing of the HUD-1/HUD-1A as such charges are prohibited by the Real Estate Settlement Procedures Act. Settlement agents who do so will be required to refund the amount collected and provided the lender with proof of the refund. Failure to refund will result in the settlement agent no longer being permitted to close loans for the Lender.

Please indicate which parties paid any POC items and to whom the fees were paid on the HUD-1.

Any Seller credits must be itemized in the Seller's column of Page 2 of the HUD-1.

Any applicable Yield Spread Premium must be disclosed on the HUD-1. The Yield Spread Premium should appear as a POC payable to the broker.

If an interest credit is applicable, it must appear on Line 801 of the HUD-1. If interest is being collected, the interest period (calendar days) must appear on Line 901 of the HUD-1.

| Fees | B)orrower S)eller L)ender T)hird Party | Total Charged | Amount Previously Paid (POC) | Due At Closing | Payee |
|------|------|------|------|------|------|
| 802 Loan Discount Fee | B | $5,175.00 | | $5,175.00 | Chase Bank USA, N.A. |
| 808 Tax Service Fee | B | $ 84.00 | | $ 84.00 | First American Tax Service |
| 816 Processing Fee | B | $ 500.00 | | $ 500.00 | Chase Bank USA, N.A. |
| 817 Underwriting Fee | B | $ 300.00 | | $ 300.00 | Chase Bank USA, N.A. |
| 818 Courier Fee | B | $ 20.00 | | $ 20.00 | Federal Express |
| 819 Flood Determination – Initial | B | $ 9.00 | | $ 9.00 | First American Flood Data Services |
| 820 Flood Certification – Life of Loan | B | $ 5.00 | | $ 5.00 | First American Flood Data Services |
| 837 Application Fee to Broker | B | $ 475.00 | | $ 475.00 | CITY CAPITAL FUNDING INC |
| 840 Processing Fee to Broker | B | $ 925.00 | | $ 925.00 | CITY CAPITAL FUNDING INC |
| 844 Appraisal Fee Broker Nonpd | B | $ 350.00 | | $ 350.00 | BESEN APPRAISAL SERVICES |
| 846 Loan Origination Fee Broker | B | $5,821.88 | | $5,821.88 | CITY CAPITAL FUNDING INC |
| 1111 Escrow Fee | B | $ 450.00 | | $ 450.00 | Investors |
| 1309 Other Prepaid | B | $ 105.00 | | $ 105.00 | INVESTORS |

B Interim Int 901N 22 days @ 63.4500 per day from 2/8/2008 - 2/28/2008        $1,395.90

Per Diem Interest is calculated on a 365-day year. The Per Diem Interest and all Chase fees have been netted from the wire. Do not cut a check for these amounts.

Net Wire Amount: $251,261.10

# FINAL

See Page 3 for all Closing Conditions...

GFS Form B05078 (3C04)                              Page 2 of 3

these General Pro——. The parties hereto Joint[ly and severally] agree to pay all costs, da————ed in paragraphs 7 and 8 of including reasonable ——omey's fees, suffered or incurred by you in connection with, or arising ou. of this escrow, including, but without limiting the generality of the foregoing, a suit in interpleader brought by you. In the event you file a suit in interpleader you shall be fully released and discharged from all obligations imposed upon you in this escrow.

9. **Purchase Contract:** Notwithstanding the fact that you may have been provided with a copy of the Purchase Contract in relation to subject property for information purposes, your liability to the undersigned is limited solely to your compliance with these instructions, and any modifications hereto given in writing prior to close of escrow; and any policy of title insurance issued in connection herewith naming the undersigned as an insured.

The undersigned acknowledge that you, as escrow holder, are not charged with the responsibility of interpreting the provisions of any contract and shall not participate in or be responsible for the monitoring contingency time periods, which may be the basis for this transaction, or making any disclosures relative to such provisions, or otherwise, even though you may have been provided a copy of such contract for information purposes. Your liability as escrow holder is limited solely to your compliance with these instructions and any supplements, addendums and amendments thereto delivered in writing.

10. **Usury:** You are not to be concerned with any question of usury in any loan or encumbrance involved in the processing of this escrow and you are hereby released of any responsibility or liability therefore. Furthermore, notwithstanding the Note has been executed, you are authorized to insert the actual date of recording in all Notes as to the commencement of interest and due date of the first payment, unless otherwise instructed.

11. **Indemnity for Attorneys Fees and Costs:** In the event suit is brought by any party to this escrow, including the title company or any other party, as against each other or others, including the title company, claiming any right they may have as against each other or against the title company, then in that event, the parties hereto agree to reimburse, indemnify and hold harmless the title company from and against any loss, attorney's fees, expenses and costs incurred by it.

12. **Destruction of Documents:** You are authorized to destroy or otherwise dispose of any and all documents, papers, instructions, correspondence and other material pertaining to this escrow at the expiration of five years from the close of escrow or cancellation thereof, without liability and without further notice to parties to the transaction.

13. **Tax Reporting And Withholding Obligations of the Parties:**

_Federal Law_ Internal Revenue Code Section 1445 places special requirements for tax reporting and withholding on the principals to a real estate transaction where the seller (transferor) is a nonresident alien, a non-domestic corporation or partnership, a domestic corporation or partnership or limited liability company controlled by non- resident corporations or partnerships or limited liability companies. Transferor/Seller and Transferee/Buyer agree that any calculation, deduction, act of action, such as the withholding of funds and/or the payment of taxes in compliance with FIRPTA, or any other Internal Revenue Service Code or Regulations, shall be the exclusive obligation of the parties, to be performed outside of this escrow.

With respect to both California and federal law, the undersigned represents and warranty to Escrow Agent that the undersigned is relying on an attorney's, accountants or other tax specialist's opinion concerning the effect of these laws on this transaction or on the undersigned's own knowledge of these laws. The undersigned is not acting on or relying on any statements made or omitted by Escrow Agent with respect to tax reporting or withholding requirements.

Seller is aware that Federal Tax Law requires that escrow holder be provided with correct taxpayer identification information. Escrow holder will report the transaction to the Internal Revenue Service including the seller's social security number or taxpayer identification number and the gross consideration. The reporting to the Internal Revenue Service can be eliminated, at escrow's option, if Seller provides escrow with a yes response to all the questions/assurances on the Real Estate Reporting Certification for Information Reporting.

_State Law_ In accordance with Section 18662 of the Revenue and Taxation Code, a buyer may be required to withhold an amount equal to 3 and 1/3 percent of the sales price in the case of a disposition of California real property interest by either:
1.    A seller who is an individual, trust, or estate or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the seller, OR
2.    A corporate seller that has no permanent place of business in California immediately after the transfer of title to the California property

The _buyer_ may become subject to penalty for failure to withhold an amount equal to the greater of 10 percent of the amount required to be withheld or five hundred dollars ($500).

However, notwithstanding any other provision included in the California statutes referenced above, no buyer will be required to withhold any amount or be subject to penalty for failure to withhold if:

1.    The sales price of the California real property conveyed does not exceed one hundred thousand ($100,000), OR
2.    The seller executes a written certificate, under the penalty of perjury, certifying that the seller is a corporation with a permanent place of business in California, OR
3.    The seller, who is an individual, trust, estate, bank acting as a trustee other than a trustee of a deed of trust or corporation without a permanent place of business in California, executes a written certificate, under the penalty of perjury, of any of the following:
   a.    The California real property being conveyed is the seller's or decedent's principal residence (within the meaning of Section 121 of the Internal Revenue Code).
   b.    The last use of the property being conveyed was used by the transferor as the transferor's principal residence within the meaning of Section 121 of the Internal Revenue Code.
   c.    The California real property being conveyed is or will be exchanged for property of like kind (within the meaning of Section 1031 of the Internal Revenue Code), but only to the extent of the amount of gain not required to be recognized for California income tax purposes under Section 1031 of the Internal Revenue Code.
   d.    The California real property has been compulsorily or involuntarily converted (within the meaning of Section 1033 of the Internal Revenue Code) and that the seller intends to acquire property similar or related in service or use so as to be eligible for nonrecognition of gain for California income tax purposes under Section 1033 of the Internal Revenue Code.
   e.    The California real property transaction will result in a loss or net gain not required to be recognized for California income tax purposes.

The seller must complete, sign and turn in the 593-C form to escrow by the close of escrow for it to be considered valid. Otherwise the escrow will withhold the full 3 1/3% of the total sales price.

The Seller may elect to pay withholding taxes based on an alternative withholding amount based on the calculations and completion of the Forms 593-E and 593-B. Escrow will withhold and remit to the FTB the alternative tax amount shown in box 8 of the form 593-B.

Borrower's Initials: _RCW_ _____            Borrower's Initials:_____/_____

8socrefin Rev. (04/09/07)

-Pa - 2 Letters - page 0095 of 0100

Lender: Chase Bank USA, N.A.                                1050492737

## WAIVER OF ESCROW ACCOUNT

This agreement is between Lender and the Borrower.

Borrower has agreed to pay all real estate taxes and insurance premiums when due and before any penalties are levied.

Borrower has agreed to furnish to Lender, upon request, within 30 days after the due date, original receipts or facsimiles or other evidence satisfactory to Lender showing payment of such taxes or insurance premiums.

At any time the Borrower has defaulted on its obligations under this agreement, Lender may, in its sole discretion:

    a)    establish an escrow account,

    b)    immediately collect funds sufficient to cover any outstanding taxes and insurance premiums due, and

    c)    begin to collect, on a monthly basis, a sum for the annual taxes and insurance premiums, in addition to whatever cushion is permitted by law and your loan documents.

Nothing in this Agreement will affect or impair Lender's security interest in, or lien priority on, the Property, and will not be deemed a waiver of Lender's right to enforce any of its rights or remedies contained in the Loan Documents.

Except as modified by this Agreement all other terms and conditions of the Loan Documents remain in effect.

This Agreement is not assignable by the Borrower but shall be assignable by Lender and, in such event, shall insure to the benefit of and be binding upon its successors or assigns.

Agreed: _____ 2-4-08
              Date

_____ 2-4-08    Chase Bank USA, N.A.
DEAN MARTIN

_____    _____
                          Lender Representative

_____
                          Date:_____

_____

_____

_____

_____

_____

WAIVER OF ESCROW AGREEMENT
C-7032BC (4/00)

EMC

PAGE 4 OF PAYOFF STATEMENT
EMC LOAN NUMBER: 0011081783

PAYOFF STATEMENT                          Emc Mortgage Corporation
                                          2780 Lake Vista Drive
January 25, 2008                          Lewisville, Texas 75067
                                          ........................

Loan No. 0011081783

Mortgagor's Name:  Dean Martin
Property Address:  252 E 46th St
                   Los Angeles CA 90011


          Flat/Other Penalty:      $     3,939.95




XP994-035/r103107/(S1

Member
Mortgage Brokers
Association of America

PAGE 2 OF PAYOFF STATEMENT
EMC LOAN NUMBER: 0011081783

<u>After February 01, 2008</u>, a new payoff quote will be required.  The payoff reflected above is based on presentment and acceptance of all payments posted.  The mortgagor should not stop payment on any payment remitted regardless of the payment method.  IF EMC is notified of a stop payment or returned check, the lien will not be released, the applicable fees may be assessed, and the amount required to pay the loan in full will be adjusted accordingly.

THE ABOVE FIGURES ARE VALID AS OF THE DATE ISSUED ONLY.  Issuance of this statement <u>does not</u> suspend the account activity pending a payoff.  The contractual requirement to make the mortgage payments when they are due remains in effect.  A LATE CHARGE OF $ 48.99 WILL BE ASSESSED 15 days after any payment is due and will be added to the amount required to pay off the loan.

PAYOFF FUNDS MUST BE SUFFICIENT TO PAY THE LOAN IN FULL, including all escrow disbursements, accrued interest, prepayment penalties, principal, fees, and other servicing charges.  <u>If the funds received are not sufficient to meet the payoff requirements, or if they are not in the form of a wire transfer or certified funds, they will be returned to the issuing party.</u>

The escrow balance is subject to change on a daily basis, as normal

deposits and/or disbursements occur.  The escrow balance will be refunded within 30 days after payoff.  The escrow balance <u>may not</u> be used toward the payoff of the loan.  The current escrow balance is $.00.

If EMC is currently drafting your checking or savings account for your mortgage payments, the drafts will continue until EMC receives your written authorization to terminate the drafts.  Please allow at least 15 days for EMC to complete the draft termination process.

EMC DOES NOT PROVIDE VERBAL PAYOFF QUOTES; however, to order a new or updated payoff quote to be faxed or mailed within one (1) business day, please use EMC's AUTOMATED INFORMATION LINE AT 1-800-723-3004.  You may also fax your request to EMC at 1-469-759-4708 or mail it to P.O. Box 293150, Lewisville, TX 75029-3150 - Attention: Payoff Department.

Please note, ONLY WIRE TRANSFER OR CERTIFIED FUNDS (cashier's checks or money orders) are accepted to pay off a loan.  TO RECEIVE SAME DAY CREDIT, PAYOFF FUNDS MUST BE RECEIVED BY 2:00PM CENTRAL TIME.  PAYOFFS RECEIVED AFTER 2:00PM CENTRAL TIME WILL ACCRUE AN ADDITIONAL DAY OF INTEREST.

XP502-037-r103107/(S1

Chase Bank USA, N.A.
CLOSING INSTRUCTIONS

| | |
|---|---|
| Loan Number: 1050492737 | Date of Closing: 2/4/2008 |
| Settlement Agent: Investors Title and Escrow | Loan must close by: 2/4/2008 |
| Address: 4665 MacArthur Court ste 100 | Funding Date: 02/08/2008 |
| Newport Beach, CA 92660 | Date Form Completed: 2/4/2008 |
| | Rescission Exp. Date: 02/07/2008 |
| Contact: CLOSING | Rate Lock Exp. Date: 2/11/2008 |
| Phone #: (949) 225-1200 | |
| Fax#: | Closer: Smith, Monica |
| Title Underwriter: First Amer Title Ins Co of NC | Closer Phone #: (800) 457-9940 |
| | Closer Fax#: |
| Borrower's Name(s): | |
| DEAN MARTIN | Purpose: Refinance Cashout |
| | Loan Program: 30 Year Fixed |
| | Property Type: 2 Family Residential |
| Titleholder's Name(s): | Occupancy Type: Primary Owner Occupy |
| DEAN MARTIN | |
| | Sales Price: $0.00 |
| | Mortgage Amount: $258,750.00 |
| Property Address: 252 E 46TH ST | Interest Rate: 8.950% |
| Los Angeles, CA 90011-0000 | Term: 360 mos. |
| | Late Charge: greater of 6% or $29 |
| Mailing Address: 252 E 46TH ST | Origination Fee: 0.000% |
| Los Angeles, CA 90011 | Discount: 2.000% |
| | |
| Seller's Name(s): | |
| DEAN MARTIN , A SINGLE MAN. | |

Principal and Interest: $2,072.66
Escrow Reserves Required: NO
Hazard Insurance:
Property Taxes:
Flood Insurance:
Other:
Total Payment: $2,072.66

If the borrower applied for a loan with Initial Interest Only Payments, the amount indicated is an Interest Only Payment.

You, as the specified Settlement Agent listed above, are authorized to close this loan, as a representative of Chase Bank USA, N.A., the mortgage lender, at the borrower's/seller's expense. The loan is to be closed only if you assume complete responsibility for fully complying with these instructions and accept full liability for failing to do so. The loan closing must comply with all applicable laws: state, federal, and local, including, but not limited to usury, RESPA, and TILA. For any deviation from the contents of these instructions must obtain written approval from Chase Bank USA, N.A. prior to proceeding with the closing.

You may not disburse our funds unless you fully comply with all Settlement Instructions.

The HUD-1 Settlement Statement must be faxed to the closing representative for approval prior to closing. The HUD-1/HUD-1A fully executed by all parties, all in compliance with the requirements of RESPA and HUD's Regulation X.

When a first mortgage loan is closing simultaneously with a subordinate lien loan, the lender requires that separate HUD-1/HUD-1A Settlement Statements be completed for each transaction. EXCEPTIONS TO THIS REQUIREMENT ARE NOT PERMITTED.

As to rescindable loans, Settlement Agent must contact all consumers with rescission rights to verify that they have not rescinded prior to disbursement.

Notify Chase immediately and do not proceed with the closing in the event of the following:

* Any required changes to the HUD-1 (i.e.: fees, payees, etc.) after it has been reviewed and approved by Chase

* The need to change or alter Chase documents. Changes to closing documents are not permitted unless approved in writing by Chase Bank USA, N.A..

* Title issue is identified at closing.

This loan cannot be closed with Power of Attorney for the Borrower without prior written approval from Chase unless required by state law.

GFS Form BC6076R (3H12)                    Page 1 of 6

Borrower: DEAN MARTIN
TR #: 1050492737

## CLOSING CONDITIONS

( 1) This is a refinance transaction subject to the right of rescission; therefore, funds must disburse no earlier than 02/08/2008.
( 2) Do not stamp or type in the date on the Notice of Right to Cancel - it must be hand-written.
( 3) Fully executed Escrow amendment reflecting correct lender, rate and terms
( 4) The California Fair Lending notice was returned, signed and dated by the borrower(s) and placed in the file.
( 5) Affidavit Regarding Proof of Identity to be completed and executed by the Settlement Agent and returned with executed Closing Package. Settlement Agent to validate all borrowers and/or title holders
( 6) Sign IRS form 4506T at time of closing
( 7) The California application addendum was returned, signed by the borrower(s), and placed in the file.
( 8) Legal Description Exhibit "A" must be attached to the Mortgage/DOT prior to recordation
( 9) MUST HAVE ORIGINAL PACKAGE BACK BEFORE THE DAY OF FUNDING OR WILL NOT BE ABLE TO FUND
(10) LOAN CANNOT FUND WITHOUT AUTHORIZATION FROM MONICA L. SMITH (630) 986-2889
(11) Other:Updated EMC payoff required prior to fund as payment just made 1/31.
(12) • • ALL PROPERTY TAXES DUE WITHIN 60 DAYS OF OUR CLOSING MUST BE PAID IN FULL AND REFLECTED ON HUD, IF POC MUST PROVIDE PROOF WITH PRELIM HUD
(13) LINE 901 DATES NEED TO BE IN THE FORMAT OF FROM____TO 03/01/08
(14) PRELIMINARY HUD MUST BE APPROVED BEFORE FINAL TIL WILL BE EMAILED OR RELEASE OF WIRE (ONCE APPROVED NO CHANGES CAN BE MADE NO EXCEPTIONS!!!)
(15) TITLE COMPANY TO PROVIDE MARKED UP TITLE COMMITMENT
(16) TITLE ESCROW COMPANY TO STAMP MORTGAGE/DOT TRUE & CERTIFIED AND COMPLETE TRUSTEE INFORMATION (PLEASE MAKE SURE COUNTY IS ON PAGE 3, IF NOT PLEASE COMPLETE)

9 - 2 Letters - page 0064 of 0100

22. **Mortgage Title Insurance Policy:** The title insurance policy on standard ALTA form (Short Forms Not Acceptable) unless otherwise agreed to by Chase Bank USA, N.A., written in an amount equal to the loan balance, must show Chase Bank USA, N.A. to be a valid first lien against the property, and must show no secondary financing unless expressly prior approved in writing by Chase Bank USA, N.A.. The insured must read, Chase Bank USA, N.A., its Successors and/or Assigns as first mortgagee. Chase Bank USA, N.A. requires affirmative title insurance coverage on all restrictions, covenants, declarations, violations of setback lines, encroachments, easements, mineral reservations, etc. In the event of a violation or future violation, Chase Bank USA, N.A. shall require insurance for any loss or damage which may be occasioned by reason of the violation (i.e. reverter or forfeiture of title). All tax liens or other liens on the property and all title exceptions not acceptable by Chase Bank USA, N.A. must be omitted from the policy. The policy must contain the following endorsements:

Alta Comprehensive
Alta 8.1 Environmental Endorsement

23. Complete The Tax Information Form in its entirety.

24. Please add the seller(s) to any and all applicable documents (including name and address on the HUD-1).

25. Ensure that a legible Exhibit A is attached to the Security Instrument and that the legal description appearing on the Deed, the Security Instrument and the title policy are exactly the same.

26. **Proof Of Identity:** Proof of each borrower's/titleholder's identity must be verified on all closings and the Affidavit Regarding Proof Of Identity Form completed. Proof must be verified using an original government issued photo identification (i.e., photo driver's license or passport) or two (2) original alternate industry acceptable proofs of identification (i.e. Social Security card, major credit card). Please note: Chase CAN NOT accept copies of photo identification.

27. Prepare and file Form 1099-S with the IRS, if applicable.

28. No escrows for repairs or for C of O's will be allowed.

29. Chase does not require use of a courier/overnight service for delivery of funds to any payees.

# Documents that must be returned to Chase Bank USA, N.A.

The Settlement Agent agrees to deliver the documentation listed below to Chase Bank USA, N.A. immediately following the execution of the loan documents by the borrower(s):

1. The original promissory note (together with any riders/addendum required) and one (1) legible copy which has been certified by the Settlement Agent as a true copy of the original.

2. Original Prepayment rider to be executed by borrower(s) at closing and attached to the original Note. (Applicable only for loans with prepayment penalties.)

3. One (1) legible copy of the conforming security instrument (together with any riders required) which has been certified by the Settlement Agent as a true copy of the original.

4. One (1) legible conformed copy of the Escrow/Impound rider which has been certified by the Settlement Agent as a true copy of the original. (Applicable only for loans without escrow/impound accounts). Original executed rider must be recorded with the security instrument.

5. One (1) copy of the executed HUD-1 Settlement Statement and Certification with original signatures. In escrow states a final HUD-1 Settlement Statement must be provided to Chase within 5 business days of disbursing funds.

6. Original executed final Truth - in - Lending (Regulation Z) Disclosure Statement. If the mortgage is an Adjustable Rate Mortgage, the ARM Disclosure must also be returned.

7. Original hazard insurance policy with paid receipt for the first year's premium (purchase) or minimum 90 days remaining term on existing policy (refinance).

8. Original flood insurance policy with paid receipt for the first year's premium (if applicable).

9. One (1) copy of executed Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance for loans requiring flood insurance (if applicable).

10. Original executed Tax Information/Contract Form.

11. Original Undertaking and Errors and Omissions Form.

12. Original executed Mortgage Rescission Statement form for each person executing the security agreement. (Applicable to rescindable transactions only.)

EMC
*Mortgage Corporation*

PAGE 3 OF PAYOFF STATEMENT
EMC LOAN NUMBER: 0011081783

WIRING INSTRUCTIONS:

                  CHASE BANK OF TEXAS, N.A.
                  ABA NO. 113000609

     FOR CREDIT TO:  EMC MORTGAGE CORP.
                  ACCOUNT NO. 07001224500
                  FOR PAYOFF OF LOAN NO. 0011081783
                  BORROWER'S NAME: Dean Martin

MAILING INSTRUCTIONS:

                  EMC MORTGAGE CORP.
                  ATTENTION: PAYOFF DEPT.
                  800 State Highway 121 Bypass
                  LEWISVILLE, TX 75067

      **Please be sure to include your EMC loan number
         and name on all correspondence and checks **

IF OWNERSHIP OF THIS PROPERTY IS TRANSFERRED, PLEASE PROVIDE THE
SELLER'S FORWARDING ADDRESS SO THAT EMC can furnish the applicable
recorded and/or year end IRS reporting information.

FHA LOANS:
As stated in the FHA Disclosure Notice, the payoff funds must
be received by EMC on the installment due date (normally the first
day of the month) to avoid the accrual of additional interest on
the prepayment (payoff prior to the loan maturity).  FHA loans accrue
interest on a monthly basis.  If EMC does not receive the funds
on or before the exact due date, you will be required to pay interest
on the amount prepaid until the next payment due date (normally the
last day of the month).

XP502-037-r103107((S)

Member
Mortgage Bankers
Association of America



4665 MacArthur Court
Newport Beach, CA 92660
Phone No. (949) 225-1200; Fax No. (949) 225-1559

## AMENDED / SUPPLEMENTAL - ESCROW INSTRUCTIONS

Jesus Flores/JF3                                     Date: February 4, 2008
Escrow Officer                              Escrow No.: 90609JF-923-JF3

To:    Investors Title Company

Property Address: 252 East 46th Street, Los Angeles, CA 90011

The above numbered Escrow is hereby amended and/or supplemented as follows:

Buyer(s) / Borrower(s) vesting to be: Dean Martin, an unmarried man.

NEW LOAN:  Buyer will obtain a new loan in the amount of $258,750.00 secured by a first deed of trust in
favor of Chase Bank USA, N.A. payable at an initial interest rate of 8.950% per annum for 30 years.
Buyer agrees to comply with lenders loan requirements and to pay lender's loan fees.  Buyer's signature
on said documents shall be indication of their approval of all terms and conditions contained therein and
Escrow Holder's authorization for the use of same.

All other terms and conditions remain the same.

BORROWER(S):


_Dean Martin_  2-4-08
Dean Martin          Date

escinamd(080704)

**GENERAL PROVISIONS**

The parties understand and acknowledge:

1. **Deposit of Funds & Disbursements and Good Funds:** All funds received in this escrow shall be deposited in an non-interest bearing account in one or more general escrow trust accounts in accordance with the <u>Notice of Opportunity to Earn Interest</u>, which I have received said notice, with the preliminary report. The accounts wherein funds are deposited and disbursed are insured under the specifications and regulations of the Federal Depositors Insurance Corporation (FDIC). You are not responsible for these deposits in the event of bank failure, nor will you provide any additional insurance on said deposits.

   All disbursements shall be made by your check or other instrument as per your instructions. You are authorized not to close escrow or disburse until good funds as provided for in California Insurance Code Section 12413.1 have been confirmed in escrow. Investors Title Company shall not be responsible for any delay in closing if funds received by escrow are not available for immediate withdrawal. Delays in closing will occur if funding is by other than bank wire, cashiers checks or similar type items payable through a California Bank.

2. **Prorations:** Unless otherwise specified in writing, all prorations and/or adjustments are to be made as of close of escrow on the basis of a 30-day month. As used herein, the expression, "C.O.E." is defined as "Close of Escrow". "H.O. Dues" or "HOA" as used herein, refers to any homeowners association or similar body which levies monthly or periodic assessments or dues for common area maintenance or similar matters.

3. **Recordation of Instruments:** You are authorized to record any documents delivered through this escrow, recording of which is necessary or proper in the issuance of the requested policy of title insurance. Seller/Borrower authorizes Investors Title Company to collect fees for recordation of documents. Investors Title Company has made their best determination of said charges prior to close of escrow and the seller or Buyer/borrower is aware that they may differ from the actual fees.

   The undersigned hereby authorize and instruct Investors Title Company to make modifications to the grantee vesting on the Deeds, in order to conform to Grantee's name to be in compliance with the Grantee's lender instructions (if any) with no further notification or instruction from the undersigned. In no event shall the name of the Grantee be changed entirely.

   In order to induce Escrow Holder to release the recording as a "Special Recording" without the benefit of the usual date down of records of the recorder's office, the undersigned Seller/Buyer/Borrower indemnifies and agrees to hold Investors Title Company and their underwriter, harmless by reason of matters that may be placed of record between the normal recording time of 8:00 and the time of the actual recording of the documents. Further, it is agreed that if any liens are filed against the seller, buyer or Borrower, Investors Title is authorized to pay said liens from refund or proceeds without further instructions whatsoever. Should additional money be needed to find all liens paid in full, the parties herein agree to deposit into escrow, immediately, the entire amount of money requested by Escrow Holder.

   Should the recording of a Deed of Trust be a part of this transaction, it is understood that the Beneficiary/Lender may collect interest one day prior to recordation of documents. Should escrow close after a weekend or holiday, the lender may charge interest during such weekend or holiday and borrower agrees to bear the cost of said interest and will hold escrow harmless in connection herewith.

   Should the recording of a Deed transferring title into or out of a Trust be a part of this transaction, in any way, it is understood, that said recording is a matter of accommodation only, pursuant to the lender funding conditions and/or instructions from the undersigned. Investors Title and their underwriter is relieved from any consequences, liability or responsibility whatsoever for the transfer of title into or out of a Trust..

4. **Fire, Flood and Hazard Insurance:** Other than as may be specifically instructed by lender, Investors Title Company is not to be concerned with nor make any inquiry as to any fire, flood, hazard and other liability insurance.

5. **Authorization to Furnish Copies:** You may furnish a copy of these instructions, amendments thereto, closing statements and/or any other documents to any real estate broker and/or lender involved in this transaction upon request of such lenders or brokers, using any practical means of delivery determined by escrow.

6. **Right of Cancellation and Termination of Agency Obligations:** The principals may mutually, instruct you to cancel the escrow by delivering to you written cancellation instructions executed by all the principals. Upon receipt of such instructions, you are authorized to comply with them, and demand payment of your cancellation charges. Alternatively, any principal may deliver to you a notice of cancellation executed by that principal. Upon receipt of such notice, you shall deliver, via mail, a copy of such notice to each of the other principals to the address provided to this escrow. UNLESS WRITTEN OBJECTION TO CANCELLATION IS FILED IN YOUR OFFICE BY A PRINCIPAL WITHIN FIFTEEN (15) DAYS AFTER DATE OF SUCH MAILING, YOU ARE AUTHORIZED, AT YOUR OPTION, TO COMPLY AND DISBURSE, IN ACCORDANCE WITH SUCH NOTICE AND DEMAND PAYMENT OF YOUR CANCELLATION CHARGES, INCLUDING, BUT NOT LIMITED TO THE MINIMUM FEE, PURSUANT TO SECTION 12404 OF THE INSURANCE CODE AND ESCROW FEES. If written objection is filed, escrow is to hold money and instruments in this escrow and take no further action until otherwise directed, either by the principals' mutual written instructions, or by final order of a court of competent jurisdiction.

   Escrow may continue the processing of this escrow, until receipt of written instructions of cancellation, conflicting instructions or our election to resign as the escrow holder; however; if no action is taken on this escrow within 6 months after the closing date (also referred to as date of performance) specified in the escrow instructions and/or estimated statement, Escrow Holder's obligation shall, at its option, terminate. Upon termination of this escrow, the parties shall pay all fees, charges and reimbursements due to Escrow Holder and all documents and remaining funds held in escrow shall be returned to the parties depositing same. Investors Title Company may elect to resign as the escrow holder at any time without liability or responsibilities to the parties of this escrow. Should the election be made to resign as the escrow holder, the parties authorize Investors Title Company to pay, from funds deposited into escrow, all bills, all fees, charges and reimbursements to Escrow Holder and all documents and remaining funds held in escrow; shall be returned to the parties depositing same.

   Furthermore, escrow may be in receipt of reports, disclosures and bills, copies of which escrow may be transmitted to the other parties of this transaction. Escrow does not review any reports, disclosures or bills for sufficiency, however; it is understood that should this escrow not close, for whatever reason, the parties agree to pay for any and all bills either as provided by instructions to Escrow or will be paid directly to the parties outside escrow. Escrow will not be responsible for payment of any bills.

7. **Action in Interpleader:** The parties expressly agree that you, as escrow holder, have the absolute right at your election to file an action in interpleader requiring the parties to answer and litigate their several claims and rights among themselves and you are authorized to deposit with the clerk of the court all documents and funds held in this escrow. In the event such action is filed, the parties jointly and severally agree to pay your cancellation charges and costs, expenses and reasonable attorney's fees which you are required to expend or incur in the interpleader action. Upon the filing of the action, you shall be fully released from the obligations to further perform any duties otherwise imposed by the terms of this escrow.

8. **Conflicting Instructions:** No notice, demand, or change of these instructions shall be in effect unless given in writing. Should you before or after close of escrow receive or become aware of any conflicting demands or claims with respect to this escrow of the rights of any of the parties hereto, or any money or property deposited herein or affected hereby, you shall have the right to discontinue any or all further acts on your part until such conflict is resolved to your satisfaction, and you shall have the further

Borrower's Initials: _Kim_____    Borrower's Initials:_____/_____

Page 2 of 6

8escrofin Rev. (04/09/07)

1050492737

## ATTACHMENT TO SECTION F – ASSETS

| Borr # | Asset Name | Type | Balance | Verified |
|--------|-----------|------|---------|----------|

Title and escrow ... ns are not authorized to provide legal or accounting advice for purpo ... determining withholding amounts. Transferors are strongly encouraged to consult with a competent tax professional for purposes of completing the FTB forms.

Any transferor (seller) who, for the purpose of avoiding the withholding requirements, knowingly executes a false certificate is liable for a penalty of $1,000 or 10% of the required withholding amount, whichever is greater.

For additional information, the principals are invited to contact the Franchise Tax Board at (888) 792-4900, or visit their website at www.ftc.ca.gov.

14. **Supplemental Taxes:** Supplemental tax bills, when issued and posted, may not be immediately available; therefore, there may be a gap in time where the bill may be posted but we would not have knowledge of it. Therefore, in the event a supplemental tax bill is issued by the County Tax Collector after the date of the above mentioned preliminary report or after the close of escrow and transfer of title, the undersigned parties agree to handle any adjustment which might result from such supplemental tax bill directly between themselves.

15. **Exchanges:** In the event this transaction is an exchange or part of an exchange, the parties acknowledge the escrow holder has made no representations whatsoever regarding the sufficiency or effect of this transaction in relation to applicable federal and state tax laws. It is further acknowledged by the parties that they have been advised by escrow holder to seek the counsel of their own tax attorney or certified public accountant for the determination of any tax consequences of this exchange.

The undersigned fully indemnify and hold escrow holder harmless from any loss or damage which the parties may sustain in the event this transaction fails to qualify for any special tax treatment.

16. **Amendment to Escrow Instructions and Counterpart Approval use of facsimile:** Any amendment or supplement to these escrow instructions, amendments and supplements must be in writing. Collectively, these escrow instructions constitute the entire escrow between the escrow holder and the parties. These escrow instructions, amendments and supplements may be executed in one or more counterparts each of which independently shall have the same effect as if it were the original, and all of which taken together shall constitute one and the same instructions. Should said documents be delivered by facsimile or electronically, parties hereto instruct Escrow Holder, at Escrow Holder's option, to rely upon such instructions as if they were original.

If requested by Escrow Holder, the Sender of facsimile documents agrees to deliver original signed forms to Escrow Holder within 72 hours. It is further understood that documents necessary for recording by the County Recorder must be original signatures, and therefore, non-receipt of the original documents to record can delay the close of escrow.

17. **Agreement of Co-Operation (Unjust Enrichment) and other remedies available for recovery of funds:** In the event that any party to this escrow receives funds or is credited with funds that they are not entitled to, for whatever reason, they agree, upon written demand, to return said funds to the proper party entitled or to the escrow for disbursement. Escrow Holder has the option to file for a Small Claims action, in a judicial district convenient to Investors Title Company. The services of a Collection Agency, may be initiated, if Escrow Holder is not in receipt of the requested funds within 15 days of a written demand. Any consequences concerning credit reporting shall not be the responsibility or liability of Investors Title Company. In the event that suit is brought to enforce the return of said funds, the parties agree to reimburse the prevailing party their reasonable attorney fees.

18. **Escrow Limited Capacity:** We understand that Escrow is acting under this Agreement as a depository only and its sole responsibility shall be to comply with the written instructions given to and accepted by Escrow under this Agreement. It is agreed and understood that these Escrow Instructions shall be the whole and only agreement between the parties with regard to the instructions to, and obligations of, Investors Title Company, and shall supersede and cancel any prior instructions. Your duties under this Agreement shall be limited to the safekeeping of money, instruments, or other documents received by you as the Escrow Agent, and for the disposition of the money, instruments or other documents received by you in accordance with the instructions contained in this Agreement. Escrow shall have no duty, obligation or responsibility to undertake any of the following actions: (a) to inquire into the sufficiency, correctness, genuineness, form, substance, manner of execution, validity or enforceability of any document deposited to escrow by others; (b) to inform either Seller, Borrower or Buyer of any facts which Escrow may have acquired outside the transaction between Seller, Borrower and Buyer,(c) Escrow Holder does not interpret documents and any comments or statements made by Escrow are only made as a general matter and are not to be considered as advise of any kind, (d) for any loss suffered by either Seller, Borrower or Buyer attributed to defects in the Title to the Real

Property except for a loss caused by Escrow's failure to obtain the required Title insurance or Title coverage. The undersigned parties jointly and severally agree to hold Investors Title Company harmless from and against any and all damages or liability, therefore, loss, costs, charges, attorneys' fees or other expenses which Investors Title Company shall or may at any time suffer, sustain or incur by reason of or in consequence of complying with the foregoing instructions. It is recommended that the parties seek independent legal counsel and other professional advise as to all matters concerning this transaction.

Escrow Holder may incur certain additional costs on behalf of the parties for services performed by third party providers. The fees charged by Escrow Holder for services, such as, but not limited to delivery, wire transfer or recording fees, have been calculated and collected based on the best available information at closing and may not be exact.

In the event Escrow Holder is requested or instructed to pay credit card accounts, collection accounts, or any debit, other than a lien against the property, it is understood such payments are made as a matter of accommodation only, and Investors Title Company is relieved from any liability or responsibility for late fees or any other costs, other than the amount shown on the estimated settlement statement. Borrower is responsible for providing escrow with account number, address and complete name of creditor. The method of delivery of payment shall be sent directly to the creditor, via U.S. Postal Service, at closing. Should Escrow Holder receive creditor information from and as a lender condition of funding, the parties to this escrow understand that Borrower remains responsible for payments and monitoring said credit accounts. Escrow Holder is not to be concerned with verification of any information, including but not limited to balances due or receipt of payment. Any disputes as to balances due or name of creditor shall be a matter conducted between the Borrower, creditor and lender directly.

19. **Copy Quality:** Any copies provided to us from the County Recorder are the best available copies and Investors Title Company is relieved from any liability or responsibility for the clarity of the copies.

20. **Identification Disclosure:** Federal and state laws require that certain forms include the party's Social Security Number or TIN, and that such forms or copies of the forms be provided to other parties and to applicable government authorities. To comply with USA PATRIOT ACT, certain taxpayer identification information (including, but not limited to the social security number) may be required from Escrow Holder by certain persons or entities involved (directly or indirectly) in this transaction.

Federal Legislation requires that buyers and sellers provide the Internal Revenue Service the Taxpayer identification Number of the party to whom interest is paid or received. This reporting is the sole responsibility of the buyer and the seller. If you will be paying or receiving interest, you are encouraged to exchange Taxpayer Identification Numbers at this time. Investors Title Company is authorized to release a party's TIN (Social Security Number) upon written request from a party to this transaction or applicable governmental authority.

Borrower's Initials: _Olw_____

Borrower's Initials:_____/_____

Page 4 of 6

escrefin Rev. (04/09/07)

**ADDITIONAL INSTRUCTIONS:**

The undersigned parties jointly and severally agree to hold Investors Title Company harmless from and against any and all damages or liability, therefore, loss, costs, charges, attorneys' fees or other expenses which Investors Title Company shall or may at any time suffer, sustain or incur by reason of or in consequence of complying with the foregoing instructions.

Should the parties have any questions concerning the signing of documents or the interpretation of these instructions, they are advised to consult their attorney.

Investors Title Company conducts escrow business under the authority of an underwritten Title Insurance Company, license number 341, issued by the California Department of Insurance.

The foregoing terms, provisions, conditions, and instructions, and those "General Provisions" contained herein are hereby approved and accepted in their entirety and concurred in by me. I will hand you necessary documents called for on my part to cause title to be shown as above which you are authorized to deliver when you hold for my account funds due me, pay your escrow charges, my recording fees, charges for evidence of title as called for, whether or not this escrow is consummated. You are hereby authorized to pay bonds, assessments, taxes, and any liens of record to show title as called for.

**ALL PARTIES HEREBY ACKNOWLEDGE RECEIPT OF A COPY OF THESE INSTRUCTIONS.**

_Dean Martin_     2-4-08
_____     _____
Dean Martin       Date                         Date

Tax ID Number: _____     Tax ID Number: _____

_____     _____
Date                                               Date

Tax ID Number: _____     Tax ID Number: _____

Forwarding Address: _____

_____

Phone Number(s): _____

Re. 2 Letters - page 0098 of 0100